# CASES

### ARGUED AND DETERMINED

#### IN THE

# SUPREME COURT OF ILLINOIS.

---

### ASBURY F. FAWSETT

*v.*

### THE NATIONAL LIFE INS. CO. OF THE UNITED STATES.

*Filed at Ottawa November 20, 1880.*

1. ASSIGNMENT—*whether restrictive, as affecting the negotiability of a bill or note.* As the negotiability of a bill or note can only be restricted by express restrictive words, the words "or order" need not be inserted in full, or any indorsement, to give the bill or note a subsequent negotiable quality. A direction to pay to a particular person does not necessarily import that it shall not be paid to any other person to whom he may indorse it, but only that it shall not pass without his indorsement.

2. SAME—*right of holder filling blank indorsement to erase the same and make note payable to himself.* The payee of a note indorsed the same in blank, and delivered it to an insurance company in which he was a stockholder, which company transferred the same to one H, who filled up the blank, making the note payable to a bank for collection on his account, and sent the same to the bank for collection, and the bank, on failing to collect the note, returned it to H, indorsed "without recourse on us," signed by the cashier: *Held,* that H, on the return of the note, had the right to strike out the indorsement he had written over the payee's signature and fill up the indorsement to himself, and that the indorsement to the bank for collection did not destroy the negotiable quality of the note.

3. SAME—*notice of payee's right by character of indorsement.* Where the payee of a note put the same into the hands of another indorsed in blank, in which condition it came into the hands of H, who filled up the indorsement, directing its payment to a bank for his use, and the same was returned uncollected, indorsed in blank by the bank "without recourse," and H afterwards sold and delivered the note to another, who had no actual notice of any

interest the payee had in the same, it was *held*, that the character of the indorsement written by H over the payee's signature afforded no notice to the purchaser from H of the payee's interest in the note, and that the purchaser was entitled to be protected as an innocent holder.

4. SAME—*indorsement construed.* An indorsement of a note over the signature of the payee to a bank for collection for account of H, is an indorsement for the benefit of H, and not for that of the payee, and such an indorsement does not destroy the negotiability of the note, but any stranger taking an indorsement from the bank would hold the same for the use of H, the same as the bank.

APPEAL from the Appellate Court for the First District; —heard in that court on appeal from the Superior Court of Cook county; the Hon. SAMUEL M. MOORE, Judge, presiding.

Messrs. GARDNER & SCHUYLER, for the appellant:

Appellant never transferred the notes, except in pledge for certain indebtedness of the Globe Insurance Company, which was fully paid, and the notes released from the pledge before Harding ever saw them.

The assignment of negotiable paper is a matter of purely statutory regulation, and can only be accomplished, to vest the legal title of the paper in the assignee, in the mode prescribed by the statute. *Ryan* v. *May*, 14 Ill. 49; *Fortier* v. *Darst*, 31 id. 212; *Badgley et al.* v. *Votrain*, 68 id. 25.

The payee has made what is called a *restrictive* indorsement. By it he appoints the Bank of Monmouth his agent for the collection of the note, and to apply the proceeds in a prescribed way. The bank took no title to the note, except for that purpose, had no interest in the proceeds, and could make no disposition of them, except as directed. The note was not, in fact or law, transferred. *Best* v. *Nokomis National Bank*, 76 Ill. 608; *Barker* v. *Prentiss*, 6 Mass. 430; *Potter* v. *Merchants' Bank*, 28 N. Y. 641; *Reamer* v. *Bell*, 79 Pa. St. 292; *Lawrence* v. *Farrell*, 77 id. 460; *Rock Co. Bank* v. *Hollister*, 21 Minn. 385; *Merritt* v. *Duncan*, 7 Heisk. 156;

*Atkins* v. *Cobb*, 56 Ga. 86; *Caldwell* v. *Evans*, 5 Bush, 380; *Payne* v. *Flournoy*, 29 Ark. 500.

An indorsement of a note for collection, or for account of another, is restrictive, and suspends the negotiability of the note while it remains upon it. *Ancher et al.* v. *Bank of England*, Doug. 637; *Sigourney* v. *Lloyd et al.* 8 B. & C. 622; *Same* v. *Same*, 5 Bing. 525; *Snee et al.* v. *Prescott et al.* 1 Atkins, 245; *Truttal et al.* v. *Bavandore*, 8 Taunt. 100; *Blaine et al.* v. *Bourne et al.* 11 R. I. 119; *Sweeney* v. *Easter*, 1 Wall. 166; *Lee* v. *Chillicothe Br. Bank*, 1 Bond, 387; *Leary* v. *Blanchard*, 48 Me. 269; *Cecil Bank* v. *Farmers' Bank*, 22 Md. 148; *Power* v. *Finnie*, 4 Call, 411; *Brown* v. *Jackson*, 1 Wash. C. C. 512; *Best* v. *Nokomis Nat. Bank*, 76 Ill. 608; *Lock* v. *Leonard Silk Co.* 37 Mich. 479.

The rule is well settled in this State that an assignee of a promissory note, taking it by an equitable title, to enforce which he has to resort to a court of equity, takes it with all the equities and infirmities existing against it, and can claim nothing under it which his assignor could not have claimed. *Olds* v. *Cummings*, 31 Ill. 188; *Fortier* v. *Darst*, 31 id. 212; *Peck* v. *Bligh et al.* 37 id. 317; *Walker* v. *Dement*, 42 id. 272; *Sumner et al.* v. *Waugh et al.* 56 id. 531.

Messrs. HIGGINS, FURBER & COTHRAN, for the appellee:

Harding, being in the lawful possession of these notes, and the same being indorsed in blank, could write such indorsement upon the note as he thought proper, and upon the return of the note to him he could have erased what he had written before delivery of the note to the National Bank of Monmouth, or after they were indorsed back to him by the cashier of that bank. *Brinckley* v. *Going*, Breese, (2d ed.) 366; *Parks* v. *Brown*, 16 Ill. 454.

If an indorser comes into possession of a bill again, after having indorsed it, whether for value or for collection, he may without any re-indorsement recover. Byles on Bills, 221, note 1; *Dugan* v. *United States*, 3 Wheat. 172; *Earbee*

v. *Wolf*, 9 Porter, 366 ; *Bond* v. *Storrs*, 13 Conn. 412; *Wright* v. *Allen*, 16 Ind. 284 ; *Chautauque County Bank* v. *Davis*, 21 Wend. 584.

The payee, or indorser, may even maintain an action upon it in his own name after he has written an assignment upon the back of a note, because he still owns the note and controls the assignment.  *Best* v. *Nokomis National Bank*, 76 Ill. 608.

A note indorsed for collection, and afterwards returned to the owner, may be negotiated by him.  *McLemore* v. *Hawkins*, 46 Miss. 715; *Atkins* v. *Cobb*, 56 Ga. 86.

The effect of an indorsement to one for the use of another, is to give notice of the rights of the beneficiary named in the indorsement, and protect him against a misappropriation. *Hook* v. *Prout*, N. Y. Court [of Appeals, October 14, 1879. *Evans* v. *Cramlington*, 5 Carthew, affirmed in the Exchequer Chamber, 2 Ventris, 309 ; *McConnell* v. *Hodsen*, 2 Gilm. 640; *Garvin* v. *Wiswell*, 83 Ill. 215.

Messrs. HUTCHINSON & LUFF, also for the appellee :

The purchaser of commercial paper before maturity, for a valuable consideration, without knowledge of any defect of title, and in good faith, holds it by a title valid against the world.  Suspicion of a defect of title, or gross negligence, will not defeat the title of the holder.  *Johnson* v. *Way*, 27 Ohio St. 374; *Shreeve* v. *Allen*, 79 Ill. 553 ; *Comstock* v. *Hannah*, 76 id. 530; *Hamilton* v. *Marks*, 63 Mo. 167 ; *Hotchkiss* v. *National Banks*, 21 Wall. 354.

These indorsements in this case are not restrictive, and do not restrain the negotiability of the notes.  *Buckley* v. *Jackson*, L. R. 3 Exch. 135; *Murrow* v. *Stewart*, 8 Moo. P. C. 267; *Byles* on Bills, p. 157, 6th ed.

The want of the words " or order," in Fawsett's indorsement, does not prevent the passing of the title.  *Edie* v. *East India Co.* 2 Burr. 1216 ; Rev. Stat. ch. 98, secs. 3, 4, and 5.

A note indorsed for collection and afterwards returned to the owner, may be negotiated by him. *McLemore* v. *Hawkins*, 46 Miss. 715; *Atkins* v. *Cobb*, 56 Ga. 86.

Appellee is not chargeable with notice, if any, to Nickerson, it not having been received by him in his capacity as director of appellee. *First National Bank* v. *Christopher*, 40 N. J. 435.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

On the 27th day of August, 1872, The South Chicago Land and Building Association executed and delivered to A. F. Fawsett, payable to his order, six promissory notes, one for $7375, due in two years, and five for $8125 each, due in three, four, five, six and seven years, all bearing interest at eight per cent, payable annually. These notes were secured by a trust deed, given to N. S. Smith, on certain real estate in Cook county.

In January, 1873, Fawsett, who was at the time a stockholder in the Globe Insurance Company of Chicago, pledged all of the notes to the First National Bank of Chicago, as security for a debt which the bank held against the insurance company. Fawsett, at the time, indorsed the notes in blank and left them with the bank.

In February, 1873, Fawsett gave an order, in writing, to the cashier of the bank, to deliver the notes to the insurance company, on demand, and under this order the company subsequently obtained possession of the notes.

In 1874, Geo. F. Harding became a stockholder in the Globe Insurance Company, and, by some means, obtained the possession of the notes. On the back of the note due in six years, and on the back of the one due in seven years, he filled up the blank indorsement of Fawsett, so that it read as follows:

"Pay to the Second National Bank of Monmouth, for collection, for account of George F. Harding, executor of Abner C. Harding, deceased.          A. F. FAWSETT."

Subsequently, the Monmouth bank returned the notes to Harding, with the following indorsement:

" Without recourse on us.

F. W. HARDING, Cashier Second National Bank."

Harding then transferred the notes to the First National Bank of Chicago, by an indorsement as follows:

"George F. Harding, executor of the estate of Abner C. Harding, deceased."

The bank, in due course of business, sold and transferred the notes to appellee, for a valuable consideration, before they were due. The notes, or the proceeds thereof, are now claimed by the original payee, Fawsett, and the question presented by the record is, had appellee, at the time it purchased the notes, such notice of Fawsett's claim or title as would defeat the title it acquired to the notes?

It is not pretended that appellee, when it purchased the notes, had actual notice that appellant, Fawsett, had any title to or interest in them, but the argument is, that the indorsement written over the signature of Fawsett is restrictive; that the notes were not, in fact or in law, transferred to the Second National Bank of Monmouth; that "an indorsement of a promissory note, for collection or for account of another, or for the use of another, is restrictive, and suspends the negotiability of the note while it remains upon it."

It is conceded that Geo. F. Harding, having the possession of the notes, with the blank indorsement of Fawsett, the payee, upon them, whether he obtained the possession rightfully or not, might have sold them to a purchaser for value, and such purchaser would have been protected in his purchase, unless, before the purchase, he had notice of the title of Fawsett.

The question then arises, how or in what manner the purchaser was affected by the indorsement written over the signature of Fawsett by Harding, which was in these words:

"Pay to the Second National Bank of Monmouth, for collection, for account of George F. Harding, executor of the estate of Abner C. Harding."

As there is no pretense that appellee had any other or different notice of appellant's title than such as was contained in the words of the indorsement, the fact that the words "or order" are omitted from the language of the indorsement, is of no importance.

As the negotiability of a bill or note originally transferrable, can only be restrained by express restrictive words, the words "or order" need not be inserted in full, or any indorsement, to give a bill a subsequent negotiable quality. Chitty on Bills, 257.

Story on Promissory Notes, sec. 142, in the discussion of the reason of the rule, says: "The reason is, that the direction to pay to a particular person does not necessarily import that it shall not be paid to any other person to whom he may indorse it, but only that it shall not pass without his indorsement."

It will be observed that the indorsement to the Second National Bank of Monmouth was not written by Fawsett. He indorsed the notes in blank, and delivered them to the Globe Insurance Company, and when the notes came into Harding's hands the indorsement of Fawsett was general and absolute. So far as he was concerned he placed the note in the market without any restriction whatever in regard to its negotiability. When the note came into Harding's hands he could have transferred the title by a delivery to any person he might find willing to buy. He had the power to transfer the note for collection by a restrictive indorsement, if he saw proper, and he could do this by writing an assignment over the name of the indorser, Fawsett, if he saw proper. When the Monmouth bank, to whom Harding had transferred the notes, failed to collect, and returned them to Harding, he had a perfect right to strike out the indorsement

which he had written, and fill up the indorsement to himself. *Bank of Utica* v. *Smith*, 18 Johns. 238.

By what means, therefore, the relation of Fawsett to the notes was changed by the assignment Harding wrote over his signature, we do not perceive; nor do we see that the negotiability of the instrument was changed, so long as Harding, when the notes were returned to him, had the right to erase the indorsement and restore the notes to the same condition they were in before the indorsement was placed upon them.

But conceding that the indorsement was, in one sense, restrictive, still the contract of indorsement to the Monmouth bank did not destroy the negotiable character of the notes. In Story on Promissory Notes, sec. 143, the author says: "It is not perhaps easy in all cases to assert what language will amount to a restrictive indorsement; or, in other words, what language is sufficient to show a clear intention to restrain the general negotiability of the instrument, or the general purposes to which the indorsement might otherwise entitle the indorsee to apply it. Where the indorsement is, 'Pay to A B, only,' then the word 'only' makes it clearly restrictive, and does not authorize a payment or indorsement to any other party. So if a bill should be indorsed, 'The within to be credited to A B,' or 'Pay the within to A B for my use,' or 'Pay the within to A B for the use of C D,' it would be deemed a restrictive indorsement so far as to restrain the negotiability, except for the very purposes indicated in the indorsement. In every such case, therefore, although the bill may be negotiated by the indorsee, yet every subsequent holder must receive the money subject to the original designated appropriation thereof."

The same author, in section 146, says: "Neither will an indorsement to A, or order for my use, restrain its negotiability, although the indorsee must take it subject to my use."

See also Story on Bills, sec. 211; Bayley on Bills, ch. 5, sec. 1.

Under the indorsement in question there was nothing that even tended to show that Fawsett, the indorser, had any interest whatever in the notes, or the proceeds when they should be collected, but on the contrary, from the indorsement it appeared that he had parted with the title and all interest in the notes. The only reasonable construction to be placed upon the language used in the indorsement is, that Fawsett, the payee, had transferred the notes to the Monmouth Bank for collection, not for himself, but for the benefit of Harding. This, under the authorities cited, did not destroy the negotiability of the instrument, but whoever should purchase would take the assignment for the use of Harding. For instance, if the Monmouth Bank had indorsed the notes to a stranger, such person would have taken them for the benefit of Harding. But when the notes were indorsed by the Monmouth Bank and returned to Harding, then the beneficial interest and legal title were united in him, and any person who might purchase from him, and receive the notes indorsed, is entitled to protection as an innocent purchaser of commercial paper.

The judgment will be affirmed.

*Judgment affirmed.*