(No. 7093. July 13, 1943.)

THE CONTINENTAL NATIONAL BANK AND TRUST COMPANY OF SALT LAKE CITY, UTAH, a corporation, Appellant, v. JOHN STIRLING, Respondent.

[140 Pac. (2d) 230.]

Rehearing Denied August 9, 1943.

124

Merrill & Merrill for appellant.

Walter H. Anderson and Clyde Bowen for respondent.

AILSHIE, J.—Appellant is a national banking corporation with its principal place of business at Salt Lake City, Utah. The Sweet Coal Company, a Utah corporation, mined and sold coal to purchasers. Respondent, Stirling, a resident of Pocatello, conducted a business at the latter place and among other things was operating a retail coal business.

This action is brought upon what is commonly called a trade acceptance, a commercial paper, in the form of a draft. The face of the draft reads as follows:

## TRADE ACCEPTANCE
### The Continental Nat'l Bank & Trust Co.
### of Salt Lake City

"No...............

Salt Lake City, Utah, Feb. 5, 1940

City of Drawer     Date

Pocatello, Idaho

Address of Drawee

On June 5, 1940    PAY TO THE ORDER OF

Date of Maturity

To Stirlings

Name of Drawee

Sweet Coal Company of Utah

Name of Payee

$2,700.00

—Two Thousand Seven Hundred and no/100—     DOLLARS $2,700.00

The obligation of the acceptor hereof arises out of the purchase of goods from the drawer. The drawer may accept this bill payable at any bank, banker or Trust company in the United States which he may designate.

Accepted at Pocatello, Ida.   on   Feb. 5, 1940

City          Date

Payable at First Security Bank

Name of Bank

Stirlings

Name of Acceptor Co.

By   John Stirling      By

Signature of Acceptor

SWEET COAL COMPANY OF UTAH

W. H. Sweet"

On the back of the paper are the following endorsements:

"NOTICE OF NON-PAYMENT
AND PROTEST WAIVED

Pay to the order of

THE CONTINENTAL NATIONAL BANK AND
TRUST COMPANY of Salt Lake City·

For Deposit Only

1-195 Sweet Coal Co. of Utah
By V. W. Sweet, Pres.

NOTICE OF NON-PAYMENT
AND PROTEST WAIVED

W. H. Sweet
V. W. Sweet

Pay to the Order of
ANY BANK OR BANKER
For collection

Prior Endorsements Guaranteed
and Trust Company

THE CONTINENTAL NATIONAL BANK
31-4    of Salt Lake City, Utah    31-4

,,

The trade acceptance was given by respondent acceptor to the Sweet Coal Company for the purchase of coal. Upon accepting and signing the draft, Stirling directed that it be paid through the First Security Bank at Pocatello. February 9, 1940, the trade acceptance was endorsed by the Sweet Coal Company and sold to appellant for $2700 and that amount was passed to the credit of the Coal Company. February 27th, interest due was charged by the bank to the account of the Coal Company. Since the purchase of the trade acceptance, the Sweet Coal Company passed into receivership.

The cause was tried to the court with a jury. At the close of the testimony, defendant renewed his motion for nonsuit. Motions for directed verdict were made by both defendant and plaintiff. Stipulation entered into between counsel, that the jury be discharged and the court take the case and decide it, was approved by the court. Whereupon judgment was entered, dismissing plaintiff's complaint and awarding costs to defendant, from which judgment defendant has appealed.

The instrument above set forth, upon which this action was instituted, was negotiable under our statute. Secs. 26-101, 26-108, 26-901, 26-1011, I.C.A. Respondent by his acceptance became primarily liable as acceptor for payment of the instrument. (Sec. 26-503, I.C.A.; *Harris v. Sainsbury*, 50 Ida. 502, 298 P. 360; *McCornick & Co. v. Gem State Oil & Products Co.*, 38 Ida. 470, 222 P. 286, 34 A.L.R. 867.)

The paramount question arises as to whether appellant was a bona fide holder of this instrument "in due course." It can not be denied that the endorsement of the bill by the drawer, after acceptance by respondent, "for deposit only", was a restrictive endorsement. (Secs. 25-1304, 26-308, I.C.A.; *Soma v. Handrulis*, 277 N.Y. 223, 14 N.E. (2d) 46; *First Natl. Bank of Sioux City, Iowa, v. Morrell & Co.*, 53 S.D. 496, 221 N.W. 95, 60 A.L.R. 863; *Haskell v. Avery*, 181 Mass. 106, 63 N.E. 15, 92 Am. St. R. 401; 8 Am. Jur., sec. 324, p. 58.) While the restrictive endorsement placed thereon by the drawer of the instrument after its acceptance says, "For deposit only," on the other hand, the oral testimony given at the trial is to the effect that the bank purchased this bill February 9th and passed the full amount of the purchase price to the checking

account of the Sweet Coal Company, the drawer of the bill. Under the same date, the bank records show that the Coal Company made two deposits and received two credits on its checking account, one for $2033.72 and the other for $5700, but of course do not disclose the sources from which the money was obtained.

This presents the problem of determining whether or not the drawer of the bill, after endorsing it "For deposit only", could then sell the paper to the bank in which the deposit was made, take the cash value and thereby convert the bank (appellant here) into a bona fide holder in due course, as against the drawer and acceptor. It has been held, under a statute like our sec. 26-319, I.C.A.,[1] (sec. 48, Uniform Negotiable Instruments Act) that one who had authority to endorse and deposit commercial items "had authority to waive the restrictive character of a specific endorsement which he himself had placed on them and to collect them as though they had been generally endorsed." (*Glens Falls Indemnity Co. v. Palmetto Bank*, 4 Cir., 104 F. (2d) 671; *Jerman v. Edwards*, 29 App. Cas. (D.C.) 535; *Robinson v. Gentry*, (Mo. App.) 106 S.W. (2d) 913.)

The only reason for denying such authority seems to be the desire of protecting the acceptor until such time as he receives from the drawer the goods or other consideration for which the acceptance was made; in other words, to preserve his right of defense on grounds of failure of consideration. However, since the bill shows on its face that "it arises out of the purchase of goods from the drawer", but fails to disclose whether or not the goods have been delivered, there is nothing on the face of the bill to give notice or put the purchaser of the bill on inquiry as to whether or not the delivery of the goods has been made, or the terms of any extraneous contract. (*Bartoshesky v. Houston Trading Corp.*, 198 Atl. 697, 700, 9 W. W. Harr. 310. The acceptor, having unqualifiedly promised to pay and having made no reference or qualification relating to the *future* delivery of the goods for which the acceptance was

---

[1] "26-319. Striking Out Indorsement. The holder may at any time strike out any indorsement which is not necessary to his title. The indorser whose indorsement is struck out, and all indorsers subsequent to him, are thereby relieved from liability on the instrument."

made, should not be heard to plead non-delivery of the goods as a justification for refusal to pay the bill at maturity when in the hands of a purchaser for value before maturity without notice.

"The holder of negotiable instruments is not bound at his peril to be on the alert for circumstances which might possibly excite the suspicions of wary vigilance; he does not owe to the party who puts paper afloat the duty of active inquiry in order to avert the imputation of bad faith." (Citing cases.)

(*Pacific States A. F. Corp. v. Addison,* 45 Ida. 270, 279, 261 P. 683; *Chesney v. Bodily,* 50 Ida. 597, 601, 298 P. 937.)

As between the purchaser for value of negotiable paper and the maker or acceptor who puts it in circulation, the loss, if any arises, should fall upon one who places it in circulation.

Judgment reversed and case remanded with direction to the trial court to enter judgment for appellant. Costs to appellant.

Budge, Givens, and Dunlap, JJ., concur.

Holden, C.J., did not sit at the hearing or participate in this decision.