LOWRANCE MOTOR COMPANY, Inc., Also known as Lowrance Buick Company, Inc., and Winfred Lowrance, Appellants,

v.

The FIRST NATIONAL BANK OF AUBURN, Auburn, ALABAMA, Appellee.

FIRST NATIONAL BANK OF AUBURN, Auburn, ALABAMA, Cross-Appellant,

v.

LOWRANCE MOTOR COMPANY, Inc., Also known as Lowrance Buick Company, Inc., and Winfred Lowrance, Cross-Appellees.

No. 16037.

United States Court of Appeals Fifth Circuit.

Nov. 27, 1956.

Rehearing Denied Jan. 8, 1957.

Frank M. Gleason, Rossville, Ga., for appellants.

John W. Maddox, Rome, Ga., J. A. Walker, Opelika, Ala., for appellee.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

CAMERON, Circuit Judge.

The appellee, First National Bank of Auburn, Alabama (hereinafter called Bank), claiming to be the holder for value, sued appellant, Lowrance Motor Company, Inc. of La Fayette, Georgia (hereinafter called Lowrance) on four checks totaling $7,025.00[1] drawn by Lowrance on a Chattanooga bank in favor of Trent Moore Motors of Opelika, Alabama (called Moore) and, by Moore, deposited in his checking account in the Bank. Lowrance stopped payment on these checks and set up in defense of this civil action that the Bank was not a holder in due course, but was acting only as agent for the depositor Moore, against whom Lowrance claimed to have a good defense.

Both parties moved for summary judgments and the trial Court granted the Bank's motion, Lowrance appealing. The controlling question presented is whether the Bank which received the deposit of the checks sued on became a holder in due course by paying checks

---

1. The judgment was for $6,088.47 and interest, the difference being represented by an amount recaptured by the Bank from Moore's account.

drawn against the deposit, even though the checks of Lowrance were endorsed restrictively and were received by the Bank on a deposit slip reciting that they were received merely for collection.[2] The record reflects a very complicated set of facts resulting from the dealings between Lowrance and Moore before the deposit and between them, the Bank and American Finance Corporation of Alabama (called Finance Company) after the deposit. But the main question here presented can be disposed of by application of settled principles of law to the crucial facts which are simple and uncontroverted.

On February 10th[3] Moore endorsed the four checks given him by Lowrance thus: "Trent Moore Motors, Inc. by Trent Moore, For deposit to the credit of Trent Moore Motors"[4]; and filled out a deposit slip containing these printed words: "In receiving items for deposit or collection, this bank acts only as depositor's collecting agent. All items are credited subject to final payment in cash or solvent credit," and delivered them to the Bank. The deposit was passed at once to the credit of Moore without restriction. At the time of this deposit, Moore had $47.29 in his account.

On the same day the Bank received a letter from the Birmingham branch of the Federal Reserve Bank dated February 9th enclosing, along with other items, three checks of Trent Moore Motors and payable to and bearing the endorsement of Lowrance: check No. 481 dated January 30, 1954 in the amount of $1,800.00; check No. 497 dated February 6, 1954 in the amount of $1,865.00; and check No. 498 dated February 6, 1954 in the amount of $1,750.00.[5] These three checks were paid by the Bank on February 10th out of the proceeds of the Lowrance checks above mentioned.[6]

February 12th, Lowrance[7] wired Moore that it had stopped payment on the four checks "until other matters cleared up", but Moore did not advise the Bank of this until February 15th.[8] The Bank also received a telegram on February 15th from its Atlanta correspondent stating that payment had been stopped. Before receiving this advice the Bank had paid out substantially the entire proceeds of the checks given by Lowrance and deposited by Moore, on which suit was brought.

Under these undisputed facts we think the Bank was the holder for value

---

2. Lowrance interposed eight affirmative defenses in his answer and these will be grouped and discussed briefly after the main question has been disposed of.

3. All dates relate to the year 1954.

4. The words "Trent Moore Motors by Trent Moore" were written with pen by Trent Moore at the top of the endorsement and the remaining words were affixed by a rubber stamp appearing under the written words.

5. These were three of a series of four checks dated from January 30th to February 6th, given by Moore to Lowrance as the purchase price of four automobiles. A short time after these four automobiles had been delivered from Lowrance's place of business in La Fayette, Georgia to Moore's in Opelika, Alabama, Lowrance went to Opelika, arriving February 9th, and on February 10th, bought the same four automobiles back paying Moore a profit of $200.00 in cash and

delivering to Moore the four checks in suit.

6. The actual entry was not made on the Bank's books until February 11th, but bore date of February 10th.

7. Lowrance stopped payment on its four checks because it claimed it received notice (a) that a check it had received from Moore had been dishonored because of insufficient funds, and (b) that the automobiles Lowrance bought back from Moore February 10th with the four checks sued on were under an undisclosed mortgage to the Finance Company. The check had, in fact, been dishonored by the Bank on February 3rd and returned to Lowrance through usual banking channels.

8. Moore first claimed he advised the Bank on February 13th, but later corrected the statement. The result would be the same because the proceeds of the Lowrance checks had been largely withdrawn prior to either date.

in due course of the four checks and was entitled to recover from Lowrance.[9] The parties differ sharply as to whether Moore's endorsements on the four Lowrance checks were restrictive endorsements. We do not find it necessary to decide this point and will assume that the endorsements were restrictive. Nevertheless, it appearing without dispute that the Bank did pay value for the checks by giving immediate unrestricted credit and by permitting the credit to be withdrawn, the relationship between the parties was fixed by these undisputed facts rather than by what was written in the endorsement or on the deposit slip.

■ The form of the endorsement and of the deposit contract are matters about which the Bank and the endorser are free to agree. What the contract between the Bank and the depositor is rests upon their intention. There can be no doubt about the fact that Moore and the Bank intended that the full right of withdrawal should exist immediately upon deposit of the four checks. The law, as generally applied in such a situation, is thus stated in 9 C.J.S., Banks and Banking, § 221 b., pp. 473–476: "The effect of crediting commercial paper to the depositor's account at the time the deposit is made, and prior to collection, with respect to the title thereto depends on the intention of the parties, to be determined from the evidence. * * * The immediate crediting of paper as cash, with a right to draw against the credit in advance of collection, will, as a general rule, transfer title to the paper to the bank of deposit in the absence of an agreement to the contrary, even where the paper has been indorsed restrictively * * *.

■ "Regardless of formal statements on a deposit slip, such as that deposits are accepted for collection only, or that items are credited conditionally or are subject to final payment, if the facts and circumstances surrounding the making of the deposit indicate that it was the intention of the parties that the depositor might draw against such deposit and he does so, the title to the items deposited thereupon passes to the bank. Moreover, an immediate credit with a right of withdrawal overcomes the effect of a statement in the deposit slip that the bank is an agent * * *." [10]

■ The Alabama rule is not in conflict with that above stated. Its Supreme Court declared, in Sherrill v. Merchants' & Mechanics' Trust & Savings Bank, 1915, 195 Ala. 175, 70 So. 723, 725: "A bank does not become a bona fide purchaser for value and without notice of a negotiable paper by simply discounting it for one not its debtor at the time and placing the amount to the credit of the holder by way of deposit. In such circumstances the act of discounting and of crediting only effects to establish the relation of debtor and creditor between the depositor and the bank; but, if the amount deposited to the checking account of the customer is exhausted before maturity or before notice of any defect, then the bank is a purchaser for value. [Citing many cases.]" [11] We have considered

---

9. The parties are in agreement that their rights are governed by Alabama law. §§ 58, 59, 61 and 63, Title 39, Code of Alabama, 1940 set forth the law substantially as contained in the Uniform Act, and define the status and the rights of a holder in due course and the presumptions applying to him. And see also §§ 3, 28, 29, 54 and 56.

10. The text of 8 Am.Jur., Bills and Notes, § 442, pp. 191–3, is to like effect: "A bank * * * does give value and becomes a holder in due course, * * * of the instrument in the event the depositor withdraws the credit, as where he draws against it and the bank honors his checks * * * The rule applies where the bank takes the instrument conditionally, as for collection; it gives value and becomes a holder in due course * * * where the credit is withdrawn by the depositor * * *"

And to like effect see 7 Am.Jur., Banks, § 456, and 8 Am.Jur., Bills and Notes, § 442, and 10 C.J.S., Bills and Notes, § 316 b.

11. To the same effect are Tatum v. Commercial Bank & Trust Co., 1914, 185 Ala. 249, 64 So. 561; Colorado National Bank v. Western Grain Co., 1928, 218

the authorities relied upon by appellant Lowrance and find that they are not in conflict with these Alabama decisions or the principles here announced.[12]

██ Another principle of law well established in the decisions, and recognized in Alabama, confirms the Bank's right to recover here, keeping always in mind that its suit is against the drawer of the checks and not the endorser. The Alabama Negotiable Instruments Law, as contained in Title 39, § 50, Code of Alabama, 1940, provides: "Holder striking out indorsement, effect of,—The owner may at any time strike out any indorsement which is not necessary to his title * * *." In dealing with a situation such as is before us here arising under a similar South Carolina statute, the Court of Appeals for the Fourth Circuit said this:[13] "It is argued, however, * * * that the authority of Link was in some manner limited because the checks cashed were indorsed 'for deposit'; but we do not think that this indorsement affects the matter. It is provided by section 48 of the Negotiable Instrument Act, section 3699 of the S.C. Civil Code of 1922, that the holder may at any time strike out any indorsement which is not necessary to his title. If it could be stricken out, its restrictive character could be waived by the holder who was also the indorser * * *; and the acceptance of cash on the check when negotiating it constituted such waiver."[14]

██ Our holding that the Bank was a purchaser for value without notice of the checks sued on really disposes of the case, but we will discuss briefly some of the propositions so earnestly relied upon by Lowrance in the argument of the affirmative defenses interposed. Appellant argues that, by two transactions of February 17th, the Bank admitted that it had handled the four Lowrance checks for collection only and that it was looking to Moore alone to make it whole. It then procured Moore to give it a demand note for $7,025.00, on the face of which was placed this inscription: "This note is given as additional security for my endorsement of check of Lowrance Motor Company, Inc. in the total amount of $7,025.00 payment on which has been stopped." The Bank has made no demand for payment of this note.

About the same time, the Bank obtained from Moore the three cancelled checks Moore had given Lowrance and which the Bank had paid on February 10th. A piece of paper was attached by the Bank to each of these checks bearing these words: "Cancelled and paid in error against uncollected funds, being checks aggregating $7,025.00 drawn by

Ala. 339, 118 So. 588; Herron Motor Co. v. First National Bank of Birmingham, 1933, 226 Ala. 434, 147 So. 198. And see also In re Grocers Baking Co., U.S.D.C.Ala., 1920, 266 F. 900, 908, affirmed 277 F. 1015; Spires v. Jones, 212 Ala. 117, 101 So. 753; Roberts v. Lindsey, 242 Ala. 522, 7 So.2d 82; and Southern Fruit Dist., Inc., v. Citizens' Bank of Fort Valley, 44 Ga.App. 832, 163 S.E. 261.

12. e. g. In Jefferson County Savings Bank v. Hendrix, 1905, 147 Ala. 670, 39 So. 295; Stones River National Bank v. Lerman Milling Co., 1913, 9 Ala.App. 322, 63 So. 776; Alexander v. Birmingham Trust & Savings Co., 1921, 206 Ala. 50, 89 So. 66; and Jefferson County Building & Loan Association v. Southern Bank & Trust Company, 1932, 225 Ala. 25, 142 So. 66, there was no evidence that the bank had paid out anything on the deposit.

13. Glens Falls Indemnity Co. v. Palmetto Bank, 4 Cir., 1939, 104 F.2d 671, 674, which case was cited with approval in Seaboard Surety Co. v. First National Bank of Birmingham, 1949, 34 Ala.App. 437, 41 So.2d 406, 410, certiorari denied by 252 Ala. 258, 41 So.2d 411. This case and Clark v. O'Neal, 1935, 231 Ala. 577, 165 So. 853, are annotated in the Code under § 50 quoted supra.

14. This case is expressive of the general rule. Cf. 8 Am.Jur., Bills and Notes, § 351, p. 88; Continental National Bank & Trust Co. of Salt Lake City v. Stirling, 1943, 65 Idaho 123, 140 P.2d 230, 149 A.L.R. 314; Atkins & Co. v. Cobb, S.Ct.Ga., 1876, 56 Ga. 86; Fawsett v. National Life Ins. Co., S.Ct.Ill., 1880, 97 Ill. 11, 37 Am.Rep. 95; and Maryland Trust Co. v. Gregory, 1946, 129 W.Va. 35, 38 S.E.2d 359.

Lowrance Motor Company, Inc. payable to and deposited by Trent Moore Motors, against which attached check was erroneously paid. Lowrance Motor Company, Inc. stopped payment on its said checks totaling $7,025.00. The First National Bank of Auburn, Auburn, Alabama, by Fred A. Duran, President." These checks were then sent back through regular channels in the hope that they would be charged back to the account of Lowrance, which had endorsed them. This course was pursued at the suggestion of the Bank's Atlanta correspondent, but nothing was accomplished.

It is plain that these steps were taken by the Bank in an effort to make itself as secure as circumstances would permit and on as many fronts as possible. The Bank had been left "holding the bag," having paid out its money and with nothing left but a lawsuit against Lowrance on four repudiated checks with all of the hazards attending such a venture. All of the parties participating in these complicated transactions had run to their lawyers and sought to strengthen their respective positions as soon as Lowrance stopped payment on the checks. It was natural and proper for the Bank to secure as much protection as it could.

The statement on the checks, giving its full weight as an admission against interest, does not have the effect of changing or weakening the fact, which is beyond dispute, that the Bank had taken the money it assumed it possessed from the four checks of Lowrance and had paid it, in large part, to Lowrance upon three of Moore's checks which would otherwise have been worthless. Nor is there anything in the contention of Lowrance that the acceptance of the note from Moore constituted a release of the Bank's claim. The words written on the note and the facts attending the entire course of handling of the transaction constitute a complete refutation of such a contention.[15]

Lowrance further claims that a transaction initiated by it on the same date, February 17th, in a like effort to mend its own fences, amounts to payment of the Bank's claim, or, in the alternative, to *res judicata* of the Bank's rights.[16] On that date, wholly without the Bank's knowledge or participation, Lowrance issued its check for $5,150.00 payable to Trent Moore Motors, American Finance Company of Alabama, and the appellee Bank, reciting above the space for endorsement that the check was accepted in full settlement of the four checks involved in the case before us. The Finance Company and Moore endorsed the check and procured it to be certified by the Chattanooga Bank,[17] whereupon it was presented to the appellee Bank for endorsement, this being its first knowledge of the transaction.

The Bank refused to endorse, and the Finance Company brought suit against it in a State Court of Alabama. That Court entered judgment against the Bank, finding that it had no claim or title to the check, and requiring the Bank to endorse it. Appeal with supersedeas was taken by the Bank to the Supreme Court of Alabama which is pending and undisposed of. There is no element of *res judicata* in the State Court proceeding, both because no final judgment has been entered, and because there is not identity of parties and subject matter. When the Bank's judgment against Low-

---

15. What the Supreme Court of Alabama said in Bank of East Chattanooga v. Clayton, 1921, 206 Ala. 518, 90 So. 899, is apposite: "The fact that the bank notified defendant a few days before the maturity of the note that it held it for collection is of no significance, and can have no effect upon the rights of the parties, since the undisputed evidence showed that the bank was the legal, as well as the beneficial, owner of the note."

And see same case, 204 Ala. 64, 85 So. 271.

16. Lowrance's pleadings did not mention the defense of *res judicata*, but certain State Court proceedings were put in evidence by stipulation and the question is adverted to in the briefs.

17. The right of the Bank to certify the check without the endorsement of the third payee is much argued in the briefs, but we do not decide it.

rance has become final and has been collected, doubtless it will, by appropriate action, relinquish whatever claim it may have asserted to the proceeds of the certified check. It is difficult to perceive that, prior to such collection, the Bank should be expected or required to release an obligation which is the subject of this action and which is not involved in those proceedings.

All of the issues requisite to proper entry of the judgment by the Court below having been disposed of, it is not necessary to discuss the contentions of the parties with respect to Count Five of the Complaint. The facts as to the material and determinant issues being without dispute, the Court below correctly entered summary judgment in favor of the Bank and against appellant.

Affirmed.