**LONE STAR BEER, INC. and Lone Star Brewing Company, Appellants,**

**v.**

**FIRST NATIONAL BANK OF ODESSA, Appellee.**

**No. 6172.**

Court of Civil Appeals of Texas, El Paso.

June 23, 1971.

Rehearing Denied July 14, 1971.

Clark, West, Keller, Sanders & Ginsberg, Cecil D. Elfenbein, Dallas, for appellants.

Turpin, Smith, Dyer, Harman & Osborn, Thornton Hardie, Jr., Midland (Shafer, Gilliland, Davis, Bunton & McCollum, Odessa, of counsel), Malvern G. McDonald, Odessa, for appellee.

## OPINION

RAMSEY, Chief Justice.

This is an appeal from a summary judgment. The actions were initiated in the 161st District Court of Ector County. Lone Star Beer, Inc. as Plaintiff-Appellant, filed suit against First National Bank of Odessa, Defendant-Appellee, to recover the amount of checks which were deposited in an account in Defendant bank other than in the account of the named payee. A similar suit was filed by Lone Star Brewing Company as Plaintiff-Appellant based on a similar cause of action. All parties filed motions for summary judgment. The trial Court consolidated the two suits on motion of the Defendant bank and granted the Defendant's motion for summary judgment. Plaintiffs have appealed. For sake of clarity, Lone Star Beer, Inc., will be referred to as Lone Star Beer, Lone Star Brewing Company will be referred to as Lone Star Brewing, and First National Bank of Odessa will be referred to as Defendant.

We affirm the judgment of the trial Court as to the cause of action asserted by Lone Star Beer, Inc., and reverse and remand as to the claim of Lone Star Brewing Company.

The controversies arose over the activities of D. D. Warren, Jr. Mr. Warren had been operating a wholesale beer distributorship in Odessa for approximately five years. He did business under the name of Warren Wholesale, Incorporated, d/b/a Lone Star Beer Sales Co. During this time, he maintained an account in the Defendant bank in the name of Lone Star Beer Sales. In May or June of 1968, Lone Star Beer, Inc. of Dallas, (referred to herein as Plaintiff-Appellant Lone Star Beer) was in need of a manager. Warren met with a Mr. Thomas A. O'Dwyer and a Mr. Phillip Joseph Schepps, who are officers and stockholders in Lone Star Beer. An

arrangement was made whereby Warren purchased a 40% interest in Lone Star Beer, paying part cash and signing a note for the balance. Warren became President and General Manager of Lone Star Beer. Thereafter, O'Dwyer, as Chairman of the Board, owned 20%, Schepps, as Vice-President, owned 20%, and Mr. Jim Gillock, as Assistant Secretary-Treasurer, owned 5%, with the balance owned by persons not actively involved in the suit.

Lone Star Beer was a distributor in the Dallas area, but not in West Texas. Warren had customers in West Texas, and desired to continue to use his trucks to haul from Lone Star Brewing in San Antonio and Oklahoma City to wholesalers that he had previously serviced. One problem arose. In order for Warren to continue his Odessa operation necessitated his having a license under which to operate. Warren testified that it was agreeable with Lone Star Beer for him to operate under its license. This added income was desired by Warren to help pay for his stock in Lone Star Beer. Mr. O'Dwyer, in his deposition, did not seem too enthusiastic with the idea, yet did state that "we admittedly had knowledge by guarded permission" of the use of Lone Star Beer's license to be used by Warren in transporting beer to West Texas. Mr. O'Dwyer at least acquiesced provided it was legal, cleared with the brewery, and that the West Texas operation have nothing to do with the Lone Star Beer distributorship in the Dallas area. The duration of such arrangement was uncertain. Warren then approached Lone Star Brewing in San Antonio by talking to Mr. Wilbur A. Wood, its Treasurer. Apparently full disclosure was made to Lone Star Brewing. In order to comply with the licensing law of the State of Texas, Lone Star Brewing, while dealing with Warren, was to show the sales having been made to Lone Star Beer under its license. Warren was actually delivering the beer, receiving the money from the West Texas purchasers, then issuing his check in payment for the beer that was billed to Lone Star Beer. Under this arrangement, Lone Star Brewing was selling its beer and Warren was able to obtain additional income by buying and operating under Lone Star Beer. Though there is no showing in the record that Lone Star Beer benefitted financially, its acquiescence and participation by its Dallas office was a necessary element in the operation. Additionally, even though Lone Star Beer purchased beer from Lone Star Brewing in cash, the brewery granted Warren fifteen days credit, if necessary, before payment was required.

The arrangement permitted Warren to send his trucks to the brewery and purchase beer at a "dock" price. The beer was invoiced to Lone Star Beer. Warren, upon delivery, charged his customers a "laid-in" price, which was merely the dock price with freight and handling added. The customer was then invoiced by Lone Star Beer. The checks were received in every conceivable manner, that is, by the truck driver or mailed to Odessa, or to Lone Star Beer in Dallas. Regardless of the manner of payment, the proceeds were deposited by Warren in Defendant bank under Lone Star Beer Sales which was the operating name of Warren Wholesale, Incorporated. This manner of operation continued from May or June of 1968, until about November of 1969. Warren estimated that some half million dollars in sales were so handled. The ultimate result was that Warren became in arrears with Lone Star Brewing in the sum of approximately $82,000.00. Demand was made by the brewery on Warren and Lone Star Beer. Warren admits the indebtedness but has no money to pay it. Mr. O'Dwyer stated that Lone Star Beer vehemently denies any liability. No suit has been filed against either Lone Star Beer or Warren.

Oral depositions were included in the record of Mr. Ernie Schur and Mr. Robert H. Latta, executive personnel with the defendant bank. All checks in controversy, though payable to variously designated

payees, were deposited in the account of Lone Star Beer Sales Co. which was owned and controlled by Warren. No explanation was given by Mr. Schur for the crediting of Warren's account other than Warren claimed the proceeds of the checks as his own when questioned by Mr. Schur at a later time. Both Mr. Schur and Mr. Latta testified that the acceptance of a check and credited to an account other than to the named payee would be less than prudent.

The checks involved in the suit filed by Lone Star Beer, Inc., amount to a total of $50,421.22. Seven of the checks were payable to "Lone Star Beer, Inc.", one payable to "Lone Star Beer", and one payable to "Lone Star Beer, Dan Warren, Dallas, Texas". The endorsements on the seven are "for deposit only" with an endorsement of either "Lone Star Beer", or "Lone Star Beer, Inc.". The other two likewise show "for deposit only", the one bearing Dan Warren's name having been endorsed by a Glynn Riechert, and the other endorsed "Lone Star Beer, Inc."

Lone Star Beer has alleged two grounds upon which it seeks damages to recover from the Defendant; namely:

(1) Conversion of funds owned by Lone Star Beer; and,

(2) The disregarding of restrictive endorsements on the checks.

We will first discuss the alleged conversion of funds by Defendant.

▆ In order to recover under the pleadings filed, Lone Star Beer must allege and prove ownership of the funds or its entitlement thereto. Mr. O'Dwyer, Chairman of the Board of Lone Star Beer, signed the petition, under oath, alleging ownership in Lone Star Beer and conversion by the Defendant. Yet, in his deposition, he emphatically denies any connection whatsoever between Lone Star Beer and Warren's West Texas operation, expressly disclaiming any interest whatsoever

in the West Texas sales receipts, income or liabilities. This is amply verified and substantiated in the deposition of Mr. Jim Gillock, the Assistant Secretary, Treasurer, and operations manager of Lone Star Beer. Mr. Gillock testified in detail regarding the operation of Lone Star Beer as it related to Warren's West Texas operation. Lone Star Beer paid its own account with Lone Star Brewing by issuing a check the day after receipt of the beer purchased. When Lone Star Beer received a statement from the brewery, that statement went directly to Warren for it would be his statement. Warren, and not Lone Star Beer, would pay the statement. Beer that was imported from Oklahoma was also separated. At the end of the month, a computation was made as to the amount imported by Lone Star Beer and the amount Warren had imported, though all of it was invoiced to Lone Star Beer. Warren would make a check for his tax liability and Lone Star Beer would compute its tax liability; then the two checks were used to purchase a cashier's check for payment of the Texas tax. Everything was kept separate. In this manner, Warren was permitted to use Lone Star Beer's license for importing beer. Any checks or correspondence from the West Texas area was routed to Warren. The monthly report made to the Texas Beverage Commission was filed by Lone Star Beer, and would include not only the amount of beer purchased by Lone Star Beer, but also that purchased by Warren. Gillock testified in detail as to the separation of the income and liabilities of the two operations, and confirmed the testimony of Mr. O'Dwyer as to the complete and separate operation of the two businesses.

Conversion has been defined in various ways. Basically, conversion is a wrongful deprivation of property. Bradley v. McKinzie, 226 S.W.2d 458 (Tex.Civ.App. NWH). There can be no conversion where the owner has expressly or impliedly assented to the taking or disposition. Terry v. Witherspoon, Tex.Civ.App., 255 S.W. 471; Tex.Com.App., 267 S.W. 973. Conversion may be committed against one who

has legal possession regardless of the question of title. First National Bank of Colorado v. Brown, 85 Tex. 80, 23 S.W. 862 (1892). In order to recover on a theory of conversion, it is necessary that Lone Star Beer allege and prove one of three things, that being, that it is the owner of the property converted or that it had legal possession of the property so taken or that it is entitled to possession. The testimony of Lone Star Beer's officers and directors expressly negate each proposition necessary to so sustain its allegations of conversion.

■ We next consider the cause of action alleged due to the Defendant's failure to observe the restrictive endorsements. Lone Star Beer relies on Sec. 3.206(c); Sec. 3.404(a), and Sec. 419(c), of the Uniform Commercial Code, V.T.C.A. Lone Star Beer insists that the Defendant's failure to comply with the restrictive endorsements prevents Defendant's being a holder for value and is thus guilty of conversion. With this position, we can only agree in part. The Defendant, in failing to abide by the restrictive endorsement, did so at its peril. Its actions were certainly contrary to the instructions on the instruments. In so doing, the Defendant exposes itself to liability to the owner or person or firm entitled to the proceeds. Lone Star Beer relies on Farmers Exchange Bank v. Kraft Foods Company, 235 F.2d 118 (USCA, 6th Circuit 1956), and Fultz v. First National Bank in Graham, 388 S.W.2d 405 (Tex. 1965), and Salsman v. National Community Bank of Rutherford, 102 N.J.Super. 482, 246 A.2d 162 (1968). The basic difference in each of these cases is that the Claimant was the owner or entitled to the funds obtained from the checks restrictively endorsed. To apply the proceeds of a restrictively endorsed check other than as directed by the instrument itself may constitute a conversion as to the true owner. Lone Star Beer has, by the depositions of its officers, repudiated both ownership and any right to possession of the funds. We therefore overrule Lone Star Beer's points of error numbered 1, 3, and 5.

■ Lone Star Brewing filed its suit against Defendant alleging conversion of $10,295.68 being the proceeds of the two drafts executed by Standard Sales Co., Inc., payable to "Lone Star Brewing Co. Dallas". Each reflects a restrictive endorsement, one being "for deposit only, Lone Star Brewing Co.", and the other stamped "credited to the account of the within payee in accordance with payee's instructions. Absence of endorsement guaranteed. The First National Bank, Odessa, Texas". The proceeds of these drafts were likewise credited to Lone Star Beer Sales Co., the account controlled by Warren.

Lone Star Brewing bases its cause of action on conversion and the failure of Defendant to deposit the proceeds of the drafts as directed by the restrictive endorsements. We are again concerned with ownership and the person or company entitled to the proceeds.

The deposition of Wilbur A. Wood is included in the record. Mr. Wood testified that he was the chief financial officer of Lone Star Brewing. He had known Warren since 1966, and met with Warren in arranging the operation whereby the sales would be made to Lone Star Beer in order that Warren could transport and sell beer in the West Texas area. Wood also made the agreement for the maximum 15 day credit on the beer transported by Warren. Wood testified that the brewery was located in San Antonio and that it also had a location in Dallas that was called "Lone Star Brewing Company of Dallas" which though not a part of the official name, was added to distinguish the particular place. As for the actual operation of Warren, Wood stated that the sale of beer was made to Warren at the dock. The title to the beer passed at that time. Wood never instructed Standard Sales Company, Inc., to mail the checks direct to the brewery, and Wood expected to receive payment from Warren for beer received by him. Wood testified that on at least one occasion, Warren had told him that he (Warren) would have the purchaser send a

check for the beer directly to the brewery, and Warren would collect his freight charges from the purchaser. However, as to these two particular exhibits on which this suit is brought, Wood had no knowledge of any agreement whereby these payments were to be made directly to the brewery. The invoices relating to the two drafts in question were not produced. Wood explains the Lone Star Brewing's claim is based on its being the named payee of the drafts, and claims that Lone Star Brewing is entitled to the money. When Warren was interrogated about whether or not the first draft was owed to the brewery, he stated "I don't think so. This is in payment of beer which was delivered by me to Odessa." Warren had no explanation as to why the check was made payable to the brewing company. Regarding the other draft, when asked what it represented, Warren testified "This again, is, as far as I know, in payment of beer which my truck delivered to Odessa, Texas, and was picked up at Lone Star Brewing Company, San Antonio".

The testimony is not clear or certain. Wood claims that Lone Star Brewing is entitled to the money. His claim is contrary to Warren's explanation. No explanation is made by Defendant as to the deposit in Warren's account. The deposition of the maker of the drafts was not taken. The only explanation offered as to the endorsements on the drafts comes from Warren. He states that Buddy Proffitt, who signed for Standard Sales, was a personal friend of his and placed the endorsements on the drafts. Warren's testimony is based on his recognition of Proffitt's handwriting and the fact that Warren requested that Proffitt do so. During this time, sales were made by the brewing company to various distributors. Ownership of the drafts or the person entitled to the proceeds is a basic and material fact issue involved.

The claim of ownership of Lone Star Brewing is less than convincing. However, it is not within the province of this Court to determine the credibility of any of the affiants or deponents, nor to evaluate the weight to be given their testimony. The only question is the determination of the existence of a material issue of fact. Rattan v. Dicker, 373 S.W.2d 306 (Tex.Civ. App., no writ). The burden of demonstrating the lack of a genuine issue of fact is upon the movant, and all doubts are resolved against him. McDonald, Texas Civil Practice, Vol. 4, Sec. 17.26, P. 1392. Applying these principles, we hold that such issue of fact does exist and that Lone Star Brewing's assignment of error number two should be sustained.

We therefore affirm the judgment of the trial Court as to the cause of action asserted by Lone Star Beer, Inc., and reverse and remand as to the claim asserted by Lone Star Brewing Company.