622 P.2d 245

George A. RUTHERFORD, Harold V. Larkin and Rancho Village Partners, a New Mexico General Partnership, Plaintiffs-Appellees,

v.

Tom DARWIN, The Settlement, Ltd., First National Bank in Albuquerque, and John C. Boydston, Defendant-Appellant.

BOMUR TELEPHONE INTERCONNECT COMPANY, Third-Party Plaintiff,

v.

GEORGE A. RUTHERFORD, INC., Third-Party Defendant.

No. 4108.

Court of Appeals of New Mexico.

June 24, 1980.

William A. Sloan, Stanley N. Hatch, Rodey, Dickason, Sloan, Akin & Robb, P. A., Albuquerque, for defendant-appellant.

Susan L. Edwards, Knight & Sullivan, Albuquerque, for plaintiffs-appellees.

## OPINION

ANDREWS, Judge.

Tom Darwin was a general partner of both Rancho Village Partners and The Settlement, Ltd., which are New Mexico limited partnerships. He had full authority to manage the funds of both entities with his signature alone.

On May 17, 1977, Darwin made a $300,000 draw against a construction loan made by Albuquerque National Bank (ANB) to Rancho Village Partners. He received the money in the form of a money order payable to "Rancho Village Partnership, Ltd." He endorsed the money order with "Deposit to the account of Rancho Village Partners, Ltd.", and took it to the First National Bank in Albuquerque (FNBIA), where both Rancho Village Partners and The Settlement had accounts. Darwin gave the money order to the teller with a pre-printed deposit slip for the account of The Settlement, and the teller wrote out the account number of The Settlement on the reverse side of the money order, below the endorsement. The teller then deposited the money order to the account of The Settlement, notwithstanding the endorsement, which directed otherwise.

Darwin intended that the deposit be made into The Settlement account. He then withdrew the bulk of the $300,000 within two weeks of the deposit of the money order, and the account was almost entirely depleted before any of the other members of the Rancho Village partnership learned of the draw seven months later. The embezzlement of Darwin was not earlier discovered because the construction loan on which the draw was made was not monitored by monthly statements which would normally be sent in conjunction with monthly billings of interest. It was unusual for a loan of that size not to be so monitored and was a deviation from the usual ANB practice with regard to such loans. Rancho Village Partners acted promptly to notify FNBIA and to protect its interest after the other members of the partnership learned of Darwin's action.

Rancho Village Partners brought suit against Darwin, The Settlement, and FNBIA to recover the $300,000. A stipulated judgment was entered against Darwin and The Settlement, and the trial court entered summary judgment against the bank. FNBIA appeals from this summary judgment.

■ The words "Deposit to the account of Rancho Village Partnership, Ltd." clearly constitute a restrictive endorsement under § 55–3–205, N.M.S.A.1978. Section 55–3–206 imposes upon FNBIA the duty to pay consistently with the restrictive endorsement, and this duty gives rise to liability for the bank if it fails to do so. *Underpinning & Foundation Constructors, Inc. v. Chase Manhattan*, 46 N.Y.2d 459, 386 N.E.2d 1319, 414 N.Y.S.2d 298 (1979).

■ FNBIA contends that Darwin "waived" the restrictive endorsement, and thus released it from its duty to pay as directed by the endorsement. We conclude, however, that New Mexico does not recognize any doctrine of the waiver of restrictive endorsements, and thus we cannot accept FNBIA's theory.

There has never been a case recognizing a doctrine of waiver of restrictive endorsements in New Mexico, but several cases decided in other jurisdictions under the Uniform Negotiable Instruments Law (NIL) suggest that the doctrine was once generally recognized. *See, e. g., Glens Falls Indemnity Co. v. Palmetto Bank*, 104 F.2d 671 (4th Cir. 1939). We are aware of no case decided since the Uniform Commercial Code (UCC) superseding the NIL as the law governing negotiable instruments which has recognized the doctrine, and thus the dispositive issue is whether the doctrine survives as part of the common law under the UCC.

The NIL was silent on the key issue of this case; both the bank's duty to pay as directed by a restrictive endorsement and the waiver exception to that rule were matters of common law under the NIL. With the adoption of the UCC, the rule as to the duty of the bank was codified in § 55–3–206.

Courts have frequently given effect to common law limitations and exceptions to newly codified common law rules. For example, many jurisdictions have held that a murderer may not take from the estate of his victim even where the general law of descent and distribution of the jurisdiction has been codified without the inclusion of that sensible and time honored common law limitation. *See, e. g., Budwit v. Herr*, 339 Mich. 265, 63 N.W.2d 841 (1954). However, the general rule is that:

> general and comprehensive legislation, prescribing minutely a course of conduct to be pursued and the parties and things affected, and specifically describing limitations and exceptions, is indicative of a legislative intent that the statute should totally supersede and replace the common law dealing with the subject matter.

2A Sutherland, Statutory Construction § 50.05 (Rev.3d Ed.1972).

This idea was applied in *Tietzel v. Southwestern Const. Co.*, 43 N.M. 435, 94 P.2d 972 (1939), where it was held that a statute empowering a trial judge to refer certain enumerated sorts of cases to a special master over the objection of the parties abrogated his common law power to do so in any other kind of case which sounded in equity.

We hold that the codification of the law of restrictive endorsements contained in the UCC is sufficiently comprehensive and detailed to exclude common law exceptions which are not mentioned. Section 55–3–206, which is entitled "Effect of restrictive endorsement", sets forth with particularity when and by whom restrictive endorsements must be observed; it must be inferred that if the legislature had intended that restrictive endorsements would become ineffective for some other reason, such a direction would have been included in this section or elsewhere in the UCC.

The official comment to this section, which is persuasive authority of the meaning of the section even though it is not binding on this Court, *First State Bank v. Clark*, 91 N.M. 117, 570 P.2d 1144 (1977), gives a further indication that the section was not to be encumbered with the common law accessories of the NIL. The comment describes the changes made by the new section as "completely revised" from the prior provision under the NIL. FNBIA argues that waiver of a restrictive endorsement as recognized prior to the UCC should be allowed because § 55–1–103 of the UCC provides for the continued effect of common law principles unless displaced by particular provisions of the UCC. However, as discussed above, we believe that § 55–3–206 displaces the preexisting law in the entire area of the effect of restrictive endorsements. Section 55–1–103 does not preserve common law principles in an area which is thoroughly covered by the UCC simply because they are not expressly excluded. *Alaska Airlines, Inc. v. Lockheed Aircraft Corp.*, 430 F.Supp. 134 (D.Alaska 1977).

FNBIA further argues the endorser of an instrument should be allowed to waive the endorsement by analogy to § 55–3–208, which states that one who reacquires an instrument may cancel any endorsement which is not necessary to his title. While the presence of this section

cuts against any notion of the "sanctity" of restrictive endorsements, it very specifically suggests that it was not the intention of its drafters to make such endorsements freely negatable. The section is not applicable because the instrument was not reacquired and because Darwin did not strike the restrictive endorsement.

This second distinction is particularly important. The presence of an uncancelled restrictive endorsement on a negotiable instrument creates the legitimate expectation that it was negotiated in accordance with the restriction, and thus it would, at least in some cases, tend to conceal embezzlement or misappropriation to allow such endorsements to be waived without being physically struck from the instrument.

FNBIA also argues that Rancho Village Partners is estopped from recovering from the bank for its wrongful disregard of the restrictive endorsement because it did not use ordinary care in structuring its affairs so that Darwin's actions should have been discovered sooner. In particular, FNBIA would have us rule that Rancho Village Partners should have arranged to receive a monthly statement showing any draws on the construction loan account at the Albuquerque National Bank, as would have been the usual practice with a loan of that size.

This contention relies upon an analogy to § 55–4–406 of the UCC, in which it is stated that the customer of a bank has an obligation to examine his bank statements and to report unauthorized signatures or alterations in his drafts. Subsection 2 of § 55–4–406 releases the bank from liability for wrongful payment such as forgery or alteration in some instances.

The principle set forth in § 55–4–406 is entirely inapplicable to the present situation. Section 55–4–406 was intended to mitigate the effect of the rather harsh rule that the bank is liable for paying drafts which contain unobvious forgery. The effect is to give the bank timely notice of the action so that it may attempt to recoup its losses from the forger, and all that is asked of the customer is that he examine the bank's documentation of transactions concerning his account.

It is certainly not the intention of § 55–4–406 to allow the bank to be insulated from the effect of its own negligence; Subsection 3 expressly limits the action of the section to cases in which the bank has used ordinary care. Even if this Court were to extend the operation of § 55–4–406 by analogy to the case at hand, and even if we were willing to impose upon the customer the obligation to structure his relationship with a third party so as to discover the improper payment the trial court would have had to believe FNBIA exercised ordinary care in its handling of the money order. The trial court did not so find.

The circumstances of the transaction cry out for attention on the part of the bank. We hold, as a matter of law, that the bank had a duty to refuse to deposit the money to the account of The Settlement. The money order was restrictively endorsed to the account of an entity entirely different from that named, on the accompanying deposit slip. The trial court observed that, particularly in light of the sum involved, the bank had an obligation to be sure that the money went into the proper account.

We adopt the reasoning of the New York Court of Appeals in *Underpinning & Foundation Constructors, Inc. v. Chase Manhattan, supra*:

The presence of a restriction imposes upon the depository bank an obligation not to accept that item other than in accord with the restriction. By disregarding the restriction, it not only subjects itself to liability for any losses resulting from its actions, but it also passes up what may well be the best opportunity to prevent the fraud. The presentation of a check in violation of a restrictive endorsement is an obvious warning sign, and the depositary bank is required to investigate the situation rather than blindly accept the check. Based on such a failure to follow the mandates of due care and commercially reasonable behavior, it is appropriate to shift ultimate

responsibility from the drawer to the depository bank.

46 N.Y.2d at 469, 386 N.E.2d at 1324, 414 N.Y.S.2d at 303.

FNBIA also suggests that the endorsement on the money order was not restrictive or that it was deposited in accord with the restriction. These arguments are entirely without merit.

The decision of the trial court is affirmed.

IT IS SO ORDERED.

WALTERS, J., concurs.

SUTIN, J., dissents.

SUTIN, Judge (dissenting).

I dissent.

Tom Darwin was the general partner of two limited partnerships—Rancho Village Partners, Ltd. and The Settlement, Ltd. Each business of the partnership was under the full and exclusive control and management of Darwin. Each partnership had a demand deposit account at the First National Bank. Rancho Village's account number was 19138062; that of The Settlement was 393410222.

Plaintiffs Rutherford and Larkin were limited partners. Rutherford was Darwin's father-in-law. The acrimony with which Rutherford attacked Darwin in deposition testimony casts serious doubt as to the credibility of the witnesses.

Darwin had full authority to borrow money, make deposits, draw checks and draw funds from construction loans.

The purpose of Rancho Village was to construct and operate a shopping center. The Albuquerque National Bank loaned Rancho Village $2,860,000.00 to construct the center.

On May 16, 1977, a draw of $300,000.00 was initiated against the ANB loan. ANB prepared a bank money order in the amount of $300,000.00 payable to "Rancho Village Partnership, Ltd." Darwin testified that Rutherford told him to go down to the bank and pick up the money order; that Rutherford did not want the $300,000.00 to go through the Rancho Village bank account;

that Rutherford directed the money order to be deposited in The Settlement bank account due to a loan problem in Rancho Village. In this manner, Rutherford purchased a $300,000.00 interest in The Settlement partnership. Rutherford disputed Darwin's testimony with epithets.

After Darwin picked up the money order in the amount of $300,000.00, he endorsed it as follows:

Deposit to the account of Rancho Village Partners Ltd.

Darwin prepared a pre-printed deposit slip of "The Settlement Ltd." He filled in the blank spaces with the date of May 16, 1977 and the net deposit of $300,000.00. Darwin took the money order and deposit slip to the FNB and presented them to the teller for deposit. The teller wrote, under the restrictive endorsement, 393410222, The Settlement Ltd. account number. The deposit slip was thereafter identified by The Settlement account number and amount of the deposit.

FNB was not notified of any dispute concerning the deposit until December, 1977, about 7 months after the deposit was made.

Based upon these facts, the trial court denied the FNB's motion for summary judgment and granted the Rancho Village Partners summary judgment. The trial court made the following oral findings read into the record:

First, that pursuant to Section 55–3–205 of the New Mexico Statutes, Annotated, 1978, the court finds that the endorsement on the check in question constitutes a restrictive endorsement.

Secondly, pursuant to Section 55–3–206 of N.M.S.A.1978, the bank in this case is required to pay the proceeds of a check such as this consistent with the endorsement * * *

Third, this was not done in the bank * * * as was shown by the deposit slip * * * wherein the deposit was made to The Settlement, Ltd. account.

*Fourth, that this court recognizes that a restrictive endorser may waive such a restrictive endorsement.*

*Fifth, that this court finds that the undisputed facts in this case do not establish a waiver by endorser in this matter as a matter of law.*

*Sixth, the contradiction in the restrictive endorsement \* \* \* with respect to the written words and the account number \* \* \* put the bank on notice of a problem with the restrictive endorsement as to which account the monies should be deposited. \* \* \**

Seventh, the provisions of Section 55–3–206 N.M.S.A.1978, therefore are applicable, and the bank's failure to pay the proceeds consistent with the endorsement results in their liability to the plaintiffs. [Emphasis added.]

These findings were followed by an oral order that summary judgment be denied the Bank and that it be granted plaintiffs.

The trial court is highly commended for making its findings of fact in a case of first impression. Authorities are sparse and none discovered that involved a general agent of two limited partnerships who, alone, effected a contradicted restrictive endorsement. The applicability of the Uniform Commercial Code to the facts of this case are vague, difficult in meaning, and subject to construction.

The trial court denied the Bank's motion for summary judgment because the Bank failed to establish a waiver of the restrictive endorsement as a matter of law.

A waiver is the intentional relinquishment of a known right. The Bank had to establish (1) that Darwin knew of the restrictive endorsement on the money order— that which he himself wrote, and (2) that Darwin intended to give up the Rancho Village's right to the deposit of the money. These facts were established beyond dispute. Regardless of what endorsement he, himself, wrote on the ANB money order, Darwin had the exclusive right to change the endorsement at anytime before or at the time of deposit. When Darwin obtained the money order he wrote in the restrictive endorsement. He intended to deposit it to the account of Rancho Village. Thereafter, he wrote up a Settlement deposit slip, either to carry out the order of Rutherford or on his own, effect a transfer of the money order from Rancho Village to Settlement.

"No restrictive endorsement prevents further transfer or negotiation of the instrument." Section 55–3–206(1), N.M.S.A. 1978. Darwin negotiated the restrictive endorsement to FNB. After any transfer or negotiation with the Bank, the Bank must act consistently with the type of endorsement that appears. Section 55–3–206(2). It logically follows that when the general partner of payee, Rancho Village, acts as endorser of the money order and presents the money order with The Settlement slip to the bank teller, and the bank teller writes The Settlement account number thereon, the deposit slip was equivalent to a line drawn through the restrictive endorsement. The restrictive endorsement was cancelled.

When FNB accepted the money order and deposited it to the account of Settlement, FNB became a holder in due course. It owed no duty of inquiry to Rancho Village, the payee. *Handley v. Horak*, 82 Misc.2d 692, 370 N.Y.S.2d 313 (1975).

FNB, being a holder in due course, takes the instrument free from all claims to it on the part of any person. Section 55–3–305(1). It is apparent that if the Bank does qualify as a holder in due course, Rancho Village would be denied the claims and defenses otherwise available to it under Section 55–3–306. *Von Gohren v. Pacific National Bank of Washington*, 8 Wash.App. 245, 505 P.2d 467 (1973).

In *Cooper v. Albuquerque National Bank*, 75 N.M. 295, 404 P.2d 125 (1965), Peke was administrator of a trust fund and general manager of an association of contractors. He received checks payable to the trust fund. He stamped the endorsement of the trust fund and immediately followed it by another stamp endorsement in sum:

Pay to the Order of
Albuquerque National Bank
For Deposit Only
All prior endorsements guaranteed
Associated Contractors.

The trust fund sued the Bank to recover the amount of the trust fund checks paid by

ANB ·on forged, unauthorized, unlawful, fraudulent, or irregular endorsements.

The court held that since Peke had authority to make the deposits, there being no evidence that the Bank acted in bad faith, the Bank was not put upon inquiry as to the amount Peke was authorized to deposit.

In the instant case, Darwin acted under authority and there was no evidence of bad faith on the part of FNB.

The only person to whom the FNB teller could inquire as to propriety and priority of the restrictive endorsement was Darwin. No duty existed to inquire of a general partner, who acted for the payee as endorser, whether he was violating his duty to Rancho Village. It would have been a useless gesture. The teller's duty was to deposit the money order to The Settlement account. She did. In good faith, she accepted the deposit slip and the money order and wrote The Settlement account number under the restrictive endorsement and credited The Settlement account. She knew the account numbers of both limited partnerships. A reasonable inference can be drawn that she may have known of Darwin's relationship with Rancho Village and Settlement.

We can arrive at no other conclusion but that Darwin waived the Rancho Village restrictive endorsement as a matter of law. The "contradiction" in the two endorsements is irrelevant.

The majority opinion concluded that "New Mexico does not recognize any doctrine of the waiver of restrictive endorsements, and thus we cannot accept FNBIA's theory." This issue is a matter of first impression. It is contra the trial court's findings, and indirectly contra New Mexico law on "waiver."

In *Clovis National Bank v. Thomas*, 77 N.M. 554, 425 P.2d 726 (1967), the court adopted the view that consent to the sale of collateral operates as the waiver of a security interest under the Uniform Commercial Code. This case does not involve restrictive covenants but it does allow the doctrine of waiver to be applied. The court said:

* * * *There being no particular provision of the code which displaces the law of waiver, and particularly waiver by implied acquiescence or consent, the code provisions are supplemented thereby. Section 50A–1–103, N.M.S.A.1953 [55–1–103, N.M.S.A.1978]* * * * * [Emphasis added.]

Section 55–1–103 reads in pertinent part:

Unless displaced by the particular provisions of this act [this chapter], the principles of law and equity * * * shall supplement its provisions.

Inasmuch as there is nothing in the Code to take the place of "waiver" of restrictive covenants, "waiver" in its pre-code law is a supplement of the Uniform Commercial Code.

The fact that "no restrictive endorsement prevents further transfer or negotiation of the instrument," allows for pre-code law and introduces the doctrine of "waiver" whenever the acquiescence, consent or intent of a party is in accord with principles of law and equity and sound public policy. "Section 1–103 provides for the application of supplementary principles of law. This section states that, unless they are displaced by the particular provisions of the Code, the principles of law and equity, such as estoppel and waiver, supplement the Code." Commercial Law—Uniform Commercial Code—Security Interests in Livestock, 8 Nat. Resources J. 183, 187 (1968). See also, 11 Am.Jur.2d, *Bills and Notes* § 409 (1963); 2 Anderson, Uniform Commercial Code, § 3–206:8 (1970).

Section 48 of the former Negotiable Instruments Law (Section 50–1–48, N.M.S.A. 1953) repealed by the Uniform Commercial Code reads:

The holder may at any time strike out any endorsement which is not necessary to his title. The endorser whose endorsement is struck out, and all endorsers subsequent to him are thereby relieved from liability on the instrument.

Under official Comment of § 55–3–208 it is stated with reference to § 48 of the Negotiable Instruments Law, "No change in the substance of the law is intended."

*Glens Falls Indemnity Co. v. Palmetto Bank*, 104 F.2d 671 (4th Cir. 1939), quoted at length in *Cooper, supra*, established the right of Darwin to waive a "for deposit" endorsement on the Rancho Village money order under § 48 of the Negotiable Instrument Law. The court said:

> * * * If he had authority to indorse the checks in the name of the mill and collect the cash on them, as is admitted, it necessarily follows that he had authority to waive the restrictive character of a special indorsement which he himself had placed on them and to collect them as though they had been generally indorsed.... [Id. 674.]

*Glens Falls* was not only followed in New Mexico, it was followed in other jurisdictions. See *Lowrance Motor Company v. First National Bank*, 238 F.2d 625 (5th Cir. 1956); *Continental Nat. Bank & Trust Co. v. Stirling*, 65 Idaho 123, 140 P.2d 230 (1943); *Seaboard Surety Co. v. First Nat. Bank of Birmingham*, 34 Ala.App. 437, 41 So.2d 406 (1949).

New Mexico via *Glens Falls* does recognize the doctrine of waiver of restrictive endorsements. It is undisputed that Darwin waived the restrictive endorsement and absolved FNB of any liability.

The authorities submitted by Rancho Village do not meet the test of the undisputed facts in this case. None of these cases discuss the issue of "waiver" of a restrictive endorsement. Of course, if a bank fails to abide by a restrictive endorsement per se, absent a waiver, it does so at its peril. *Lone Star Beer, Inc. v. First National Bank of Odessa*, 468 S.W.2d 930 (Tex.Civ.App. 1971); *In Re Quantum Development Corporation*, 397 F.Supp. 329 (Virgin Islands, 1975), affirmed, but not followed in 534 F.2d 532 (3rd Cir. 1976) (district court followed common law on breach of trust by a receiver); *C. S. Bowen Co., Inc. v. Maryland Nat. Bank*, 36 Md.App. 26, 373 A.2d 30 (1977) (where bank took checks stolen by employee who was not true owner and who had no authority from employer to transfer or negotiate them); *O. K. Moving & Storage Co. v. Eglin Nat. Bank*, 363 So.2d 160 (Fla.App.1978) (where bank opened account in name of payee's employee and deposited in that account checks bearing stamp for deposit only to employer).

To cite and analyze the other cases set forth would be mere repetition. They are based upon forged or unauthorized endorsements. For that reason, we turn to the case relied on in the majority opinion which held that a claim, based upon an effective forged restrictive endorsement, stated a claim for relief. *Underpinning, etc. v. Chase Manhattan*, 46 N.Y.2d 459, 386 N.E.2d 1319, 414 N.Y.S.2d 298 (1979). The court was "called upon to determine when, if ever, the drawer of a check may sue a depositary bank which accepts the check and pays out the proceeds in violation of a forged restrictive endorsement." In this case, "[a]n employee of plaintiff * * * falsified invoices from plaintiff's suppliers, stole the checks written to pay these false invoices, *restrictively indorsed them to the named payees and then deposited them to his own or confederate's accounts*, maintained with, among others the defendant Bank of New York (BNY). When these checks were presented BNY, despite the restrictive indorsements, accepted them and applied the proceeds thereof to the credit of accounts other than those indicated in the indorsements." [Emphasis added.] None of the named payees kept accounts there, 403 N.Y. S.2d 501-2, 61 A.D.2d 628 (1978). The Court of Appeals affirmed the lower court. It held that the complaint stated a claim upon which relief could be granted. The court said:

> In summary, we hold today that a drawer may directly sue a depositary bank which has honored a check in violation of a forged restrictive indorsement in situations in which the forgery is effective * * * It is basic to the law of commercial paper that as between innocent parties any loss should ultimately be placed on the party which could most easily have prevented that loss * * * [386 N.E.2d 1323, 414 N.Y.S.2d 302.]

*Underpinning* stands for the proposition that a depositary bank like FNB can be

held liable if it and Rancho Village were innocent parties and FNB could most easily have prevented the loss. FNB was an innocent party. It cannot be said with impunity that Rancho Village was an innocent party. It put the conduct of its business solely in the hands of its general partner. Its general partner, acting within the scope of his authority, set this transaction in motion and directly caused the loss of Rancho Village. In effect, Rancho Village promoted the loss by making Darwin its general manager. The loss must fall on Rancho Village. *Continental Bank v. Wa-Ho Truck Brokerage*, 122 Ariz. 414, 595 P.2d 206 (1979).

A depositary bank has also been held liable where it cashed checks for a defalcating bookkeeper which were payable to her employer from various customers, or credited her account over her unauthorized endorsement. The Bank, however, was not liable where there was no restriction on the bookkeeper's actual authority to draw checks on her employer's account. *Von Gohren, supra*. After a lengthy discussion of pertinent provisions of the Code, the court said:

> Considering the provisions of the code as a whole does, we think, lead to the conclusion that, except for certain limited circumstances, the one who accepts an instrument on an *unauthorized signature or endorsement* was intended to be liable to the true owner of the instrument.
>
> *Such a result is totally consistent with the general pre–code rule * * * * [Emphasis added.] [8 Wash.App. 245, 505 P.2d 474.]

See also, *Swiss Baco Skyline Logging, Inc. v. Haliewicz*, 18 Wash.App. 21 567 P.2d 1141 (1977).

Authorization to endorse was the focal point which determined the Bank's liability. We can say without any equivocation that Darwin had sole authorization to endorse the money order.

The FNB was not liable to Rancho Village. Summary judgment should be entered for FNB.