No. 21943.

J. Y. BARNES AND PORTLAND CEMENT ASSOCIATION, AN UN-
INCORPORATED ASSOCIATION *v.* CHERRY CREEK NATIONAL
BANK OF DENVER, A NATIONAL BANKING ASSOCIATION.
(431 P.2d 471)

Decided August 28, 1967.     Rehearing denied September 25, 1967.

MITCHELL BENEDICT, for plaintiffs in error.

WELLER, FRIEDRICH and HICKISCH, for defendant in error.

*In Department.*

Opinion by MR. CHIEF JUSTICE MOORE.

J. Y. BARNES and Portland Cement Association, hereinafter referred to as Portland, brought an action in the trial court against the defendant in error, hereinafter referred to as the bank, seeking recovery of moneys paid out by the bank under the following circumstances, none of which are in dispute. These admitted facts as set forth in the pre-trial order are as follows:

"Plaintiff, J. Y. Barnes, was the payee of check #4405 of Portland Cement Association, dated October 7, 1963, for $5,088.70. That the funds represented by said check were at all times the property of plaintiff, Portland Cement Association, and said check was drawn on its account in the First National Bank of Chicago, payable to the order of J. Y. Barnes, District Engineer, Portland Cement Association, 721 Boston Building, Denver 2, Colorado, in order to transmit funds of said Association to its checking account with the Denver United States National Bank, in Denver, Colorado. That plaintiff, J. Y. Barnes, endorsed said check as follows:

" 'J. Y. Barnes
Jack Y. Barnes
For Deposit Only'

and said check was mailed to Denver United States National Bank in a bank-by-mail envelope similar to plaintiff's Exhibit D, with a deposit slip similar to plaintiff's Exhibit B, with bank-by-mail folder similar to plaintiff's Exhibit C, for deposit to the account of the Portland Cement Association.

"The envelope containing the check was deposited in the cooperative mailing rack in the lobby of the Boston Building, 828 - 17th Street, Denver, Colorado, on October 9, 1963. The cooperative mailing rack is an authorized depository for mail matter, and consists of a metal rack on which three (3) open U.S. mail sacks are hung, and is used as a receptacle for the deposit of mail.

"The letter containing said check was stolen from said United States mail depository by one, Denzil Arthur Woodward, who, on October 10, 1963, opened a checking account #22-53116 in the Cherry Creek National Bank in the name of Jack Y. Barnes; that said Denzil Arthur Woodward represented himself as Jack Y. Barnes, and opened said account by depositing said check, which he had stolen from the mail; that at that time Cherry Creek National Bank placed its account No. 22-53116 below the endorsement of J. Y. Barnes; that defendant, Cherry Creek National Bank of Denver, paid $250.00 in cash to Denzil Arthur Woodward, who represented himself as Jack Y. Barnes, and credited the balance of said check, $4,838.70 to checking account No. 22-53116 in the name of Jack Y. Barnes.

"That said check being plaintiffs' Exhibit 'A' from the Portland Cement Association for $5,088.70, was accepted by the drawee bank, First National Bank of Chicago, and through regular banking channels, defendant, Cherry Creek National Bank, received payment thereof in the amount of $5,088.70. That subsequent thereto, checks were drawn against said account by Denzil Arthur Woodward, representing himself to be Jack Y. Barnes, and all of the money deposited in said account, except $577.03, was withdrawn, prior to the time that

defendant, Cherry Creek National Bank, had any notice that said check, plaintiff's Exhibit 'A', had been stolen and prior to the time that said bank had any notice that its depositor, Denzil Arthur Woodward, was not J. Y. Barnes, the true payee of said check."

Various exhibits were admitted in evidence under a stipulation entered into between the parties. They included the check issued to Barnes and forms similar to those used by him in his attempt to "Bank-by-Mail."

There was also admitted on stipulation, as an exhibit offered by the bank, the card containing the signature purporting to be that of the payee of the check, actually written by the thief, which he signed in order that withdrawals might be made from the account which he opened with the deposit of the stolen check.

The trial court, after argument on the law as applicable to the agreed facts, entered judgment in favor of the bank, except as to the amount of $577.03 admittedly due Barnes and Portland, being the sum still on deposit in the bank when the fraud of Woodward was discovered.

As grounds for reversal counsel for Barnes and Portland argue that:

"1. In an action for conversion of personal property, a defendant is not absolved from liability by its good faith in the transaction.

"2. Endorsement of the check 'for deposit only' is a restrictive endorsement and the depository bank is the agent for collection of the check.

"3. The restrictive endorsement of the check destroyed its negotiability and legal title to the check or the proceeds therefrom remained in the true payee, J. Y. Barnes.

"4. The defendant was not a holder in due course for the reason no value was ever given to the true owner of the proceeds of the check.

"5. Where a check is presented to a bank for payment or for deposit by a person who is unknown to the bank,

418

it is the imperative duty of the bank to require a person to properly identify himself as the payee named in the check, and the failure of the bank to require such identification amounts to negligence.

"6. The equities in this case are with the plaintiffs inasmuch as the defendant was in a better position to avert the loss had it performed its duty of requiring proper identification.

"7. A debtor-creditor relationship did not arise at the time of the collection of the check in question for the reason that the title to the proceeds did not pass to the depository bank.

"8. The defendant bank was guilty of a conversion of the proceeds of the check when it took and used said proceeds, although innocently, for a different purpose other than turning the proceeds over to the true owner thereof.

"9. The decision in *Sparks v. Bank of Georgia*, 110 Ga. App. 198, 138 S.E.2d 86 (1964), rendered on facts substantially identical to those under consideration, should control in the determination of the issues in the case at bar."

The main thrust of the argument for reversal is placed on paragraphs numbered 2, 3 and 4 above.

C.R.S. 1963, 14-8-5, in pertinent part provides that an endorsement,

"* * * of an item by the payee or other depositor 'for deposit' shall be deemed a restrictive endorsement and indicate that the endorsee bank is an agent for collection of the item."

The Negotiable Instruments Law, (C.R.S. 1963, 95-1-36), in effect at the time involved in this action, provides in pertinent part as follows:

"(1)(a) An indorsement is restrictive, which either:

(b) Prohibits the further negotiation of the instrument; or

(c) Constitutes the indorsee the agent of the indorser; or * * *."

██ Under these statutes by the restrictive endorsement "for deposit only" affixed to the check by the real Barnes, the negotiability of the check was destroyed and the bank became the agent of the owner of the check for the purpose of collection thereof. 9 C.J.S. *Banks and Banking* § 222. A restrictive endorsement preserves the title of the endorser to deposited items in the absence of contrary course of dealings. The endorsement in this case "for deposit only" being restrictive, did not transfer title to the check, and the bank in receiving it became an agent for collection. In the instant case the bank became the agent of the true owner of the check, the real J. Y. Barnes who had endorsed the check "for deposit only." The bank collected the item and permitted an imposter to withdraw most of the funds in the account, notwithstanding the fact that the payee of the check was particularly described as being "District Engineer, Portland Cement Assn., 721 Boston Bldg."

██ Being an agent for collection of the true owner of the check, and having paid out moneys to an imposter, the bank is liable for the loss. See in this connection *Sparks v. Bank of Georgia*, 110 Ga. App. 198, 138 S.E.2d 86.

The judgment is reversed with directions to enter judgment for the plaintiffs.

MR. JUSTICE MCWILLIAMS and MR. JUSTICE HODGES concur.