Robert M. TRAVIS, and Patricia Haberman, as Co-Personal Representatives of the Estate of Katherine A. Warnock, Deceased, Plaintiffs-Appellants,

v.

LA JUNTA STATE BANK, Defendant-Appellee.

No. 83CA1194.

Colorado Court of Appeals, Div. III.

July 19, 1984.

Rehearing Denied Aug. 2, 1984.

Certiorari Granted Jan. 14, 1985.

Edward Garlington, Jr., John R. Stewart, La Junta, for plaintiffs-appellants.

Mitchell & Mitchell, P.C., Michael T. Mitchell, Rocky Ford, for defendant-appellee.

VAN CISE, Judge.

Plaintiffs, the personal representatives of the estate of Katherine A. Warnock, deceased, sued defendant, La Junta State Bank (bank), claiming it had converted the proceeds of a cashier's check. After a trial to the court, judgment was entered in favor of the bank. Plaintiffs appeal; we reverse.

The facts are not disputed. On or about November 15, 1979, Warnock purchased a $53,541.93 cashier's check payable to herself drawn on the Pueblo Bank and Trust Company. Some time between November 15 and November 30, Warnock indorsed the check "Katherine Warnock." Jerry Quick, her lawyer, wrote under her signature the words "deposit only." On or about November 30, this check, so indorsed, was deposited by Quick or one of his employees into the Marquez Trust account at the bank pursuant to a deposit slip for that account. The Marquez Trust account was an account maintained at the bank by Quick. Warnock had no account in her own name in this bank on or subsequent to November 30, 1979, and no statements of account were sent to her by the bank during 1979

or thereafter. The check was processed through normal banking channels and was paid by the Pueblo Bank.

Warnock died November 10, 1981. On June 24, 1982, plaintiffs made demand on the bank for payment of the amount of the check. The bank refused. At that time there were no funds in the Marquez Trust account. This lawsuit followed.

On these facts, the trial court held that plaintiffs could not recover and dismissed the action.

On appeal, plaintiffs contend that the trial court erred in not finding that the check was restrictively indorsed for the benefit of Warnock, that the treatment of the check or its proceeds here was inconsistent therewith, and that, therefore, the bank was liable for the amount of the check. We agree.

Warnock indorsed the check in blank. It is not known whether Quick added the words "for deposit" at the same or a later time. If, when Warnock delivered the check to Quick, the additional words were not on it, it could be said that at that time he became a transferee under § 4–3–201, C.R.S., was a holder in due course under § 4–3–302, C.R.S., and the check in its then posture was freely negotiable pursuant to § 4–3–204(2), C.R.S.

However, Quick wrote additional words under Warnock's signature before it was presented to the bank. By so doing, he converted freely negotiable bearer paper back to non-bearer paper. The words "for deposit" made the indorsement restrictive. Section 4–3–205(c), C.R.S. This imposed upon the depository bank the duty, consistent with the indorsement, not to deposit the funds in any account other than one for the indorser. Section 4–3–206(3), C.R.S. The breach of this duty gave rise to liability of the bank to the indorser Warnock, and the representatives of her estate, for depositing the check into the wrong account and allowing the subsequent withdrawal of her funds from that account. *Rutherford v. Darwin*, 95 N.M. 340, 622 P.2d 245 (1980); *Underpinning & Founda-*

*tion Constructors, Inc. v. Chase Manhattan Bank*, 46 N.Y.2d 459, 414 N.Y.S.2d 298, 386 N.E.2d 1319 (1979). *See also Barnes v. Cherry Creek National Bank*, 163 Colo. 414, 431 P.2d 471 (1967) (similar result under Negotiable Instruments Law, which was the predecessor of the Uniform Commercial Code).

In view of the above holding, the bank's contention that plaintiffs lack standing to sue is without merit. Since none of the bank's affirmative defenses were supported, the trial court should have entered judgment for plaintiffs.

Accordingly, the judgment is reversed and the cause is remanded to the trial court with directions to enter judgment for the plaintiffs and against the bank in the face amount of the check, plus interest from the date the plaintiffs' demand was refused by the bank, plus costs in both courts.

TURSI, J., concurs.

METZGER, J., dissents.

METZGER, Judge, dissenting.

I respectfully dissent.

The majority opinion in this case relies on Article 3 of the Uniform Commercial Code in reaching its conclusion that the bank is liable. In my view, an analysis under Article 4 of the Uniform Commercial Code is the more appropriate means of resolving this controversy, since Article 4 controls Article 3. Section 4–4–102, C.R.S.; § 4–3–103(2), C.R.S.

Under § 4–4–105(a), C.R.S., the La Junta State Bank was a depositary bank for purposes of the transaction here, it being the first bank to which the check was transferred for collection. Under § 4–4–205(1), C.R.S., a depositary bank has the authority to supply any necessary missing information to complete an indorsement. That section provides:

"A depositary bank which has taken an item for collection may supply any indorsement of the customer which is necessary to title unless the item contains the words 'payee's indorsement required' or the like. In the absence of such a

requirement a statement placed on the item by the depositary bank to the effect that the item was deposited by a customer or credited to his account is effective as the customer's indorsement."

Here, at the time that the check was presented to the depositary La Junta State Bank for collection, there was sufficient information given to that bank to trigger the action allowed by § 4–4–205(1), C.R.S. The uncontradicted facts show that the writing "for deposit only" was made by Jerry Quick, and not by Katherine Warnock. As well, the deposit slip attached to the check listed this check and its amount specifically, and it was a deposit slip for an account controlled by Mr. Quick. Furthermore, Katherine Warnock did not have an account in the La Junta State Bank. Hence, the bank's action in placing the funds in an account beyond the reach of Warnock was proper under the statute, and it should incur no liability therefor.

The purpose of the Uniform Commercial Code is to simplify, clarify, and modernize the law governing commercial transactions and to permit the continued expansion of commercial practices. Section 4–1–102, C.R.S. The comment to § 4–4–205, C.R.S., specifically provides that subsection (1) is designed to speed up collection by eliminating any necessity to return to a non-bank depositor any items he may have failed to indorse.

In my view, the trial court's judgment was correct, both in terms of a strict statutory analysis under Article 4 of the Uniform Commercial Code, and under a policy rationale to effectuate the purposes for which the Uniform Commercial Code was enacted.

Accordingly, I would affirm the trial court's judgment.