**La JUNTA STATE BANK, Petitioner,**

v.

**Robert M. TRAVIS, and Patricia Haberman, as Co-Personal Representatives of the Estate of Katherine A. Warnock, Deceased, Respondents.**

No. 84SC301.

Supreme Court of Colorado,
En Banc.

Oct. 20, 1986.
Rehearing Denied Nov. 10, 1986.

Mitchell & Mitchell, P.C., Michael T. Mitchell, Rocky Ford, for petitioner.

John R. Stewart, Edward Garlington, Jr., La Junta, for respondents.

Holland & Hart, Bruce T. Buell, Rayma Skeen, Denver, for amicus curiae Colorado Bankers Assn.

KIRSHBAUM, Justice.

The respondents, personal representatives of the estate of Katherine A. Warnock, deceased, filed this action against the petitioner, La Junta State Bank (the Bank), seeking recovery of the amount of a cashier's check they alleged had been wrongfully deposited by the Bank. After a bench trial, the trial court entered judgment in favor of the Bank. The Court of Appeals reversed the trial court's judgment. *Travis v. La Junta State Bank*, 694 P.2d 350 (Colo.App.1984). We granted certiorari to review the Court of Appeals' decision, and now reverse that judgment.

## I

On or about November 15, 1974, Warnock purchased a cashier's check in the amount of $53,541.93 payable to her order and drawn on the Pueblo Bank and Trust Company. At some time between November 15, 1979, and November 30, 1979, Warnock indorsed "Katherine Warnock" on the reverse side of the check and Warnock's attorney, Jerry Quick, wrote the words "deposit only" under Warnock's indorsement. On November 30, 1979, Quick or one of his employees deposited the check into the Marquez Trust account, an account maintained at the Bank by Quick.[1] Warnock did not at any time maintain an account with the Bank. The Bank collected the amount of the check from the Pueblo Bank and Trust Company.

Warnock died on November 10, 1981. One of the respondents subsequently conducted an examination of Warnock's personal papers and found no record of a receipt for the sum of $53,541.93. On June 24, 1982, the respondents made demand on the Bank for payment of that amount. No funds remained in the Marquez Trust account at that time, and no evidence was introduced at trial regarding disbursement of funds from that account.

When the Bank refused their demand, the respondents filed an action seeking recovery of the sum of $53,541.93 on grounds of conversion, negligence, breach of implied contract, and money had and received. The respondents contended that the words "deposit only" were placed on the check by Quick for the benefit of Warnock. Alternatively, they argued that the Bank had a duty either to deposit the item into an account for Warnock or to undertake further investigation of the indorsement before crediting the sum to any account other than an account for Warnock.

The trial court determined that Warnock had indorsed the check in blank and delivered it to Quick, that the check therefore became bearer paper upon Warnock's indorsement, and that the check was negotiable by delivery alone. The trial court then concluded that the respondents failed to establish any legal interest in the check or its proceeds and, therefore, lacked standing to recover on their claims. It also concluded that the respondents failed to prove they had suffered damages.

On appeal, the majority of a divided Court of Appeals panel concluded that Quick's addition of the words "deposit only" below Warnock's signature created a restrictive indorsement and that, because the Bank failed to treat the instrument accordingly, it was liable to the respondents for the full amount of the check.

## II

To assist our analysis of the parties' contentions, we first review pertinent provisions of the Colorado Uniform Commercial Code (the Code) concerning the handling of commercial paper. Article 3 of the Code, §§ 4-3-101 to -805, 2 C.R.S. (1973 & 1986 Supp.), governs transactions in negotiable

---

1. For other opinions involving Quick, see *People v. Quick*, 716 P.2d 1082 (Colo.1986), and *People v. Quick*, 713 P.2d 1282 (Colo.1986).

instruments. Two methods for transferring instruments evidencing legal rights are recognized: transfer and a special form of transfer, negotiation. §§ 4–3–201, –202. The latter type of transfer is pertinent to this inquiry.

Negotiation is defined as "the transfer of an instrument in such form that the transferee becomes a holder." § 4–3–202(1). A holder is defined as "a person who is in possession of . . . an instrument . . . drawn, issued, or indorsed to him or to his order or to bearer or in blank." § 4–1–201(20), 2 C.R.S. (1973). Section 4–3–301 provides that a holder of an instrument, whether or not the owner thereof, may transfer or negotiate the instrument and, except in certain circumstances, may discharge it or enforce payment thereon. A transferee must be a holder to acquire the status of a holder in due course and, as such, take the instrument free from all claims to it and most defenses of any party to the instrument. *See* §§ 4–3–302, –305.

Whether an instrument is payable to order or bearer is critical to the determination of whether proper negotiation has occurred. §§ 4–3–110, –111. An instrument payable to order is negotiated by delivery with any necessary indorsement. An instrument payable to bearer is negotiated by delivery alone. § 4–3–202(1). "Delivery," or the voluntary transfer of possession, § 4–1–201(14), 2 C.R.S. (1986 Supp.), is essential for negotiation of either type of instrument.

The Code does not define the term "indorsement." However, the term is generally understood to mean the indorser's writing of his or her signature on the instrument or the affixing of the indorser's name or some designation identifying the indorser. on the instrument. *See* 5 R. Anderson, *Anderson on the Uniform Commercial Code*, § 3–202:24–:28 (3d ed. 1984); J. White and R. Summers, *Handbook on the Law Under the Uniform Commercial Code*, § 13–10, at 504–05 (2d ed. 1980); *see also* § 4–3–401(2). Two broad categories of indorsements are established by the Code: special and blank indorsements. A special indorsement identifies particularly the person to whom the instrument is payable. Any specially indorsed instrument is payable to order and may be further negotiated only by indorsement and delivery. § 4–3–204(1).[2]

An indorsement may also become qualified or restrictive as the result of the addition of certain language to a blank or special indorsement. Section 4–3–205 provides the following definition of a restrictive indorsement:

An indorsement is restrictive which either:

(a) Is conditional; or

(b) Purports to prohibit further transfer of the instrument; or

(c) Includes the words "for collection", "for deposit", "pay any bank", or like terms signifying a purpose of deposit or collection; or

(d) Otherwise states that it is for the benefit or use of the indorser or of another person.

Subsections 4–3–206(2) and (3) contain the following provisions relating to "for deposit" restrictive indorsements:

(2) An intermediary bank, or a payor bank which is not the depositary bank, is neither given notice nor otherwise affected by a restrictive indorsement of any person except the bank's immediate transferor or the person presenting for payment.

(3) Except for an intermediary bank, any transferee under an indorsement which is conditional or includes the words "for collection", "for deposit", "pay any bank", or like terms . . . must pay or apply any value given by him for or on the security of the instrument con-

---

**2.** Order paper may be converted to bearer paper by an indorsement in blank. § 4–3–204(2). A holder of a negotiable instrument indorsed in blank may convert that blank indorsement into a special indorsement (thus converting bearer paper to order paper) by writing over the signature of the indorser in blank any contract consistent with the character of the indorsement. § 4–3–204(3).

sistently with the indorsement and to the extent that he does so he becomes a holder for value. In addition, such transferee is a holder in due course if he otherwise complies with the requirements of section 4-3-302 on what constitutes a holder in due course.

These provisions require a depositary bank or other taker of an instrument containing a "for deposit" restrictive indorsement to apply the value evidenced by the instrument in accordance with the indorser's direction. *Rutherford v. Darwin*, 95 N.M. 340, 622 P.2d 245 (Ct.App.1980); *Underpinning & Foundation Constructors, Inc. v. Chase Manhattan Bank*, 46 N.Y.2d 459, 414 N.Y.S.2d 298, 386 N.E.2d 1319 (1979); *see also* J. White and R. Summers, *supra,* § 13-10, at 513-15.

### III

The foregoing summary of relevant Code provisions is helpful in assessing the effect of Quick's addition of the words "deposit only" to Warnock's indorsement and in determining the Bank's responsibilities upon taking the check. It is undisputed that when Warnock purchased the check it was negotiable order paper in her hands. *See* §§ 4-3-104(1)(d), -110(1). The trial court concluded that when Warnock indorsed the check in blank and delivered it to Quick, it was converted from order paper to bearer paper, negotiable by delivery alone until specially indorsed. § 4-3-204(2). The trial court also concluded that Quick's addition of "deposit only" below Warnock's signature did not convert Warnock's blank indorsement into a special indorsement. *See* § 4-3-204(3).

Implicit in the trial court's conclusions is the assumption that Quick added the words "deposit only" to the check at some time after Warnock's indorsement thereof. This implicit finding is supported by the stipulation of facts and the evidence disclosed by the record.[3] Therefore, we also conclude that when Warnock indorsed the check in blank and delivered it to Quick, Quick became a holder of the instrument in bearer form with the right to transfer or negotiate it by delivery alone.[4] §§ 4-3-301, -204(2).

The respondents argue that, assuming Quick was initially a holder of a check in bearer form, his act of affixing the words "deposit only" to the check deprived him of that status, destroyed the negotiability of the check and converted Warnock's blank indorsement into a restrictive indorsement. This argument is untenable.

Quick, as holder of an instrument, was not authorized by any Code provision to convert his transferor's blank indorsement into a restrictive one. *Cf.* § 4-3-204(3) ("The holder may convert a blank indorsement into a special indorsement by writing over the signature of the indorser in blank any contract consistent with the character of the indorsement."). Furthermore, the respondents incorrectly assume that a blank indorsement and a restrictive indorsement create mutually exclusive methods for negotiation. As U.C.C. § 3-206 official comment 5 (1978) indicates, "indorsements 'for collection' or 'for deposit'

---

**3.** The trial court's determination that Quick wrote "deposit only" on the check after Warnock had signed it finds analogous support in § 4-3-414(2). That provision, dealing with an indorser's contract of liability, states that "indorsers are liable to one another in the order in which they indorse, which is presumed to be the order in which their signatures appear on the instrument." *Id.* While we are mindful that Quick's writing of "deposit only" on the check did not constitute his signature, we are persuaded that the order in which Warnock's and Quick's writing appears on the check is indicative of the sequential order in which they affixed their respective writing to it.

**4.** The respondents have never directly questioned the trial court's finding that Warnock delivered the check to Quick. The stipulation of facts and the evidence presented at trial do not make clear the manner in which Quick obtained possession of the check. This factor does not, however, alter our analysis; once Quick obtained possession of the check he was a holder of bearer paper, and whether or not the owner thereof, he had the right to transfer or negotiate the check. *See* 5 R. Anderson, *Anderson on the Uniform Commercial Code,* § 3-202:42 (1984).

may be either special or blank." *See also* J. White and R. Summers, *supra*, § 13–10, at 504 ("a special or a blank indorsement may also be a 'restrictive indorsement' "). A single indorsement, therefore, may be both in blank and restrictive. *See Spielman v. Manufacturers Hanover Trust Co.*, 60 N.Y.2d 221, 469 N.Y.S.2d 69, 456 N.E.2d 1192 (1983). The nonrestrictive character of Warnock's indorsement was determined when she affixed her signature to the check.

The respondents suggest that cases decided under the prior Negotiable Instruments Law, C.R.S. 1963 95–1–1 to 95–4–7, support their argument that Quick's addition of words of restriction destroyed his ability to negotiate the check. *See Barnes v. Cherry Creek National Bank of Denver*, 163 Colo. 414, 431 P.2d 471 (1967) (under Negotiable Instruments Law a restrictive indorsement destroys negotiability). Section 4–3–206(1) of the Code expressly provides that "[n]o restrictive indorsement prevents further transfer or negotiation of the instrument." *See* U.C.C. § 3–206 official comment 1 ("[s]ubsection (1) [of section 3–206] . . . appl[ies] to all four classes of restrictive indorsements defined in [s]ection 3–205"). By adopting the Code the General Assembly changed the effect of a restrictive indorsement on a negotiable instrument. *See People v. Marques*, 184 Colo. 262, 520 P.2d 113 (1974). Therefore, the cases relied upon by the respondents do not answer the question presented here.

▮ The respondents' assertion that Quick's addition of the restrictive language to the check was for Warnock's benefit is not supported by evidence in the record. Section 4–3–202(2) states that "[a]n indorsement must be written by or on behalf of the holder . . . ." Although an authorized agent can indorse an instrument on behalf of a principal, § 4–3–403(1), the respondents presented no evidence that Quick wrote "deposit only" on behalf of

Warnock, and no such inference can be drawn from the fact that Quick was Warnock's attorney at all pertinent times. The record contains no evidence suggesting why Warnock purchased the check or how Quick acquired it. The evidence presented at trial simply failed to support the respondents' theory. *See Marron v. Helmecke*, 100 Colo. 364, 67 P.2d 1034 (1937); *Cheney v. Hailey*, 686 P.2d 808 (Colo.App.1984).

▮ The majority of the Court of Appeals panel determined that Quick's conduct altered the status of the check, converting it "back to non-bearer paper," and also "made the indorsement restrictive." *Travis v. La Junta State Bank*, 694 P.2d at 351. Whether a negotiable instrument is order or bearer paper in the hands of a particular possessor is determined by the face of the instrument or the last indorsement thereon. *See* §§ 4–3–202, –204; 2 F. Hart and W. Willier, *Commercial Paper Under the Uniform Commercial Code* § 3.07 (1986). As a result of Warnock's indorsement in blank, Quick became a holder of the check in bearer form and the check was negotiable by delivery alone. Contrary to the conclusion of the majority of the Court of Appeals panel, Quick's addition of the words "deposit only" to the check neither changed Warnock's blank indorsement into a special indorsement, thereby converting the bearer paper to order paper,[5] *cf.* § 4–3–204(3), nor altered the effect of her blank indorsement. *See Spielman v. Manufacturers Hanover Trust Co.*, 60 N.Y.2d 221, 469 N.Y.S.2d 69, 456 N.E.2d 1192 (1983); J. White and R. Summers, *supra* § 13–10, at 504.

## IV

▮ The fact that Quick was a holder of bearer paper does not end the inquiry into the propriety of the Bank's conduct. Section 4–3–206(3) of the Code requires a depositary bank, upon being presented with a negotiable instrument containing an indorsement which includes the words "for

---

**5.** The Court of Appeals' opinion does not suggest that by converting bearer paper to non-bearer paper Quick made the check a non-negotiable instrument. We, therefore, treat the Court of Appeals' use of the term "non-bearer paper" to mean order paper.

deposit" or like terms, to "pay or apply any value given by him for or on the security of the instrument consistently with the indorsement...." This obligation affords protection to payees or indorsers who indorse items "for deposit" in the belief that such indorsement will guard against further negotiation of the instrument to a holder in due course by a finder or a thief. *See* U.C.C. § 4–205 official comment 2; J. White and R. Summers, *supra* § 13–10, at 515. The duty to examine a restrictive indorsement and follow its directions may require a bank to refuse to deposit an item in a particular account if such conduct would be inconsistent with the restrictive indorsement, *Salsman v. National Community Bank of Rutherford,* 102 N.J. Super. 482, 246 A.2d 162 (Super.Ct. Law Div. 1968), *aff'd per curiam,* 105 N.J.Super. 164, 251 A.2d 460 (Super.Ct.App.Div.1969); *Rutherford v. Darwin,* 95 N.M. 340, 622 P.2d 245 (Ct.App.1980), or to investigate rather than accept an item as a matter of course, *Underpinning & Foundation Constructors, Inc. v. Chase Manhattan Bank,* 46 N.Y.2d 459, 414 N.Y.S.2d 298, 386 N.E.2d 1319 (1979).

■ On November 30, 1979, the Bank received a cashier's check in the amount of $53,541.93, payable to Warnock and inscribed "Katherine Warnock, deposit only," accompanied by a deposit slip for an account maintained by Quick. In spite of the fact that the check appeared to contain a restrictive indorsement by a payee who did not have an account with the Bank, the Bank neither refused to deposit the check nor inquired into the circumstances surrounding what appeared to be a restrictive indorsement.

The Bank and amicus Colorado Bankers Association argue that because Quick's writing of "deposit only" on the check created a restrictive indorsement by Quick, the Bank was authorized by section 4–4–205(1), 2 C.R.S. (1973), to supply any necessary missing information to complete his indorsement. Section 4–4–205(1) states:

A depository bank which has taken an item for collection may supply any indorsement of the customer which is necessary to title unless the item contains the words "payee's indorsement required" or the like. In the absence of such a requirement a statement placed on the item by the depository bank to the effect that the item was deposited by a customer or credited to his account is effective as the customer's indorsement.

This provision is not applicable to the circumstances of this case.

■ Although section 4–4–205(1) authorizes a depository bank to place a statement[6] on its customer's check which is effective as the customer's indorsement, no such statement was placed on the check by the Bank. Moreover, we do not believe section 4–4–205(1) permits a depository bank to evade its duty to act consistently with restrictive indorsements imposed by section 4–3–206(3).

■ Section 4–4–205(2), in a nearly verbatim restatement of section 4–3–206(2), provides that "[a]n intermediary bank, or payor bank which is not a depositary bank, is neither given notice nor otherwise affected by a restrictive indorsement of any person except the bank's immediate transferor." The clear import of both section 4–4–205(2) and section 4–3–206(2) is that while intermediary banks and nondepositary payor banks may ignore all restrictive indorsements except those of the bank's immediate transferor, depositary banks may not so ignore restrictive indorsements. *See* U.C.C. § 4–205 official comment 2. The Code's forceful restatement of a depositary bank's responsibility with regard to restrictive indorsements supports the conclusion that a depositary bank may not invoke its authority to supply a customer's missing indorsement to escape the consequences of its failure to comply with the directions of

---

**6.** Such a statement, applied in stamp form by what is commonly called a § 4–205 stamp, generally provides the following, or language to like effect:

CREDIT TO THE ACCOUNT OF THE WITHIN NAMED PAYEE
In Accordance with Payee's Instruction Absence of Endorsement Guaranteed

what objectively appears to be a restrictive indorsement of another. *Cf. Perini Corp. v. First National Bank of Habersham County,* 553 F.2d 398 (5th Cir.1977) (authority to add missing indorsement under U.C.C. § 4–205(1) does not immunize bank from liability under its warranty of title). A contrary conclusion would severely weaken the Code's protection of restrictive indorsers.

■ In this case the Bank, as a depositary bank, received a check containing what appeared to be a restrictive indorsement by Katherine Warnock. The record does not reveal who actually delivered the check and the deposit slip to the Bank. Thus, at the moment it received the restrictively indorsed check, the Bank appeared to owe a duty to Warnock to either comply with the directions of the indorsement or to inquire further concerning the transaction because of the simultaneous receipt of a deposit slip directing deposit of the check into an account other than Warnock's. However, because the check was bearer paper when Quick received it, he was free to direct its deposit in any manner he elected. Any inquiry by the Bank would have revealed that, although the language inscribed on the instrument appeared to constitute a restrictive indorsement by Katherine Warnock, the words "deposit only" had been added by Quick on his own behalf; the indorsement was in fact a restrictive indorsement by Quick; and the Bank owed a duty to Quick on November 30, 1979, to honor his restrictive indorsement. Under the particular circumstances of this case, the Bank in fact owed no duty to Warnock and the respondents are entitled to no damages.

### V

For the foregoing reasons, the judgment of the Court of Appeals is reversed. The case is remanded to that court with directions to reinstate the judgment of the trial court.